<hr/>

[No. 4157.]

# JOHN BREUNER v. THE LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY.

CONSTRUCTION OF INSURANCE POLICY.—If a policy of insurance against fire contains a clause, that if the building shall fall except by fire, the insurance shall immediately cease, and the walls of the building are of brick,

and a portion falls, leaving more than three-fourths standing, the building is not a fallen building within the condition of the policy, and if destroyed by fire in that condition, the insurance company is liable for the loss.

IDEM.—A clause in an insurance policy, that the same shall be void if any change occurs in the building by which the degree of risk is increased without the written consent of the company, has reference only to a change produced by the act of the insured, to which the company could consent upon application of the insured, and not to a change occasioned by accident or a cause over which the insured had no control.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

The plaintiff was the owner of a two-story brick building, Nos. 166, 168 and 170, on the south side of K street, between Sixth and Seventh streets, in the city of Sacramento, and was doing business in the same, having a stock of furniture and upholstery goods. The defendant was a foreign insurance company doing business in this State, and on the second day of March, 1872, in consideration of a premium of one hundred and thirty dollars paid to it by the plaintiff, insured the plaintiff against damage or loss by fire, to the amount of ten thousand dollars, for one year, upon his stock of furniture, upholstery goods, etc., in said building. The thirteenth condition in the policy was as follows:

"XIII. If a building shall fall, except as the result of a fire, all insurance by this company on it, or its contents, shall immediately cease and determine."

The second condition in the policy was as follows:

"II. That in case of any change by which the degree of risk is increased without the written consent of this company, this policy shall be null and void."

The building was of brick, and had a frontage of sixty feet on the south side of K street, and the westerly forty feet of its frontage had a depth southward of eighty feet, and the easterly twenty feet of its frontage had a depth southward of one hundred feet.

The following is a correct ground-plan of the building and of the brick wall thereof:

SOUTH ALLEY.

K STREET—NORTH.

The fifth finding referred to in the opinion was as follows:
"That on the 23d day of April, A.D. 1872, at half-past twelve o'clock in the afternoon, that part of the brick walls of said building indicated by the dotted line on said plan and extending from B to C, and also a part of the front wall, including the brick pillar B, and a space of five feet on each side of said pillar B, which last-mentioned fallen space in said front wall went up in the shape of ·an arch or inverted V to within three feet of the cornice of said front wall, fell outwards, into K street. All the other walls were left standing, but the whole front wall was so badly cracked that it required to be pulled down and rebuilt. The roof over that part of the building indicated on the plan as being between the letters A and B and C and D broke off from the rest of the roof and fell into the cellar, with the walls stated to have fallen, but the rest of the roof of 170 remained undisturbed and attached to the fire-walls. Also, the roof of 166 and 168 became detached from the east wall of said building to the extent of sixty feet by the falling of said partition-wall, as before mentioned. Said roof of 166 and 168 was also partially detached from the north wall thereof, had dropped down about nine feet at the northeast corner, and so that said roof at said corner rested upon said furniture in the second story of said building. Pier B (see diagram) between 166 and 168 and 170, fell out, and there was a break in the front or north wall of both buildings about ten feet wide, running up in the shape of an arch, to within three feet of the cornice of the buildings, and the center of this arch was over the point that had been occupied by said pier B; all the floors of said building (Nos. 166 and 168), and all the studding and supports of the same, remained in place after the fall of said walls and roof. And the whole of the rear part of said building, No. 170, extending southward from the line on said plan marked C D, remained standing in place after said fall of said walls."

At half-past seven o'clock P. M. of the 25th day of April, 1872, a fire broke out in a wooden building—not part of the premises insured—at a distance of about fifty feet from the cross-wall marked C D, in said plan, and destroyed all

that part of said building which stood on lots No. 166 and 168, and that part of No. 170 which extended back from the cross-wall, marked in said plan C D; and also destroyed a large amount of furniture, upholstery goods and merchandise of the value of over twenty thousand dollars, the greater part of which were in that part of the building which did not fall. This was an action on the policy to recover for the loss. The court rendered judgment for the defendant. The plaintiff appealed.

. The other facts are stated in the opinion.

*G. W. Spaulding*, for the Appellant.

The clause on the back of the policy in relation to fallen buildings is to be construed strictly against the underwriters, as it tends to narrow the range and limit the force of the principal obligation. (*Hoffman et al.* v. *Ætna Fire Insurance Co.*, 32 N. Y. 405.)

Under a strict construction it seems to us that the entire building must fall, and that the falling of less than one-tenth, as in the present instance, would not determine the insurance. (*The New Jersey Steam Navigation Co.* v. *The Merchants' Bank*, 6 How. 382.)

As to the effect of conditions, see also *Hitchcock* v. *The Northwestern Ins. Co.*, 26 N. Y. 68; *The Mayor of New York* v. *The Hamilton Fire Ins. Co.*, 39 N. Y. 45; *Wolf* v. *The Security Fire Ins. Co.*, 39 N. Y. 49; *O'Neil* v. *The Buffalo Fire Ins. Co.*, 3 N. Y. 122; *Hynds & Morgan* v. *The Schenectady Co. Mutual Ins. Co.*, 16 Barbour, 119; *Kunzee* v. *American Exchange Ins. Co.*, 41 N. Y. 412.)

*Beatty & Denson and Henry Edgerton*, also for the Appellant.

The question is, whether, when a policy of insurance provides that if the building in which goods are situated falls, the policy shall cease, it means that if *any portion* of the building falls, it shall be a forfeiture of the policy; or does it mean if the whole building falls, or so much of it as to leave the standing part not a house or building, but a mere fragment? Good policy would seem to require the

latter interpretation.   If the falling of a *part* of a building is to constitute the building a fallen building, within the meaning of this term, then we scarcely know where the dividing-line is to be.

With regard to the proper rule for interpreting these provisos, conditions, stipulations, etc., in policies, we maintain that all the courts have adopted the same rule—to construe them strictly against the insurance companies and liberally in favor of the insured; in other words, never to hold a policy forfeited unless the language is so explicit as to forbid any other reasonable interpretation.   And this rule we think in accordance with law, reason and justice. (*Hoffman* v. *Ætna Ins. Co.*, 32 N. Y. 405.)

*McAllisters & Bergin*, for the Respondent.

The ground taken by the plaintiff (appellant), that the *whole* building — every wall—must fall ere it becomes a building that has fallen, does not accord with a rational or sensible construction of the policies.   What was the object sought by defendant (respondent) in inserting the thirteenth condition?

It was to be relieved from indemnîfying against fire as to a building, or as to its contents, which had become exposed by falling.

It required no act on the part of the insurance company to cancel the policies; by the fall of the building they ceased and determined.

The happening of this event, over which the insurance company had no control, of and by itself, dissolved the policies.   They fell with the building.

The insurance company insured a brick building, and a certain stock of furniture and upholstery "contained in the two-story basement brick building." The building falls. Thereupon the original subject of the insurance becomes completely changed.   The brick building no longer exists as a building.   The stock of furniture and upholstery is no longer contained in a brick building.   (*Nave* v. *Home Mut. Ins. Co.*, 37 Mo. 430; Flanders on Fire Ins. 476, 477, 483, 484; Bunyon on Fire Ins. 66.)

The conditions and stipulations indorsed on the policies, and distinctly referred to in the body thereof as the basis of the insurance, are properly incorporated into the policies sued on, and constitute a part thereof. (*Burritt* v. *The Saratoga C. M. F. Co.*, 5 Hill, 188; *Jennings* v. *The Chenango Co.*, 2 Denio, 75; *Egan* v. *The Mutual Ins. Co.*, 5 Denio, 326; *Murdoch* v. *The Chenango Co.*, 2 Comstock, 210.)

By the COURT:

The court found, as a conclusion of law, "that before said·fire, said building had become a fallen building within the terms of the policy set forth in plaintiff's complaint, and that the falling down was not the result of a fire." This finding, although stated among the conclusions of law, is the finding of an ultimate fact. The plaintiff attacks this finding as contrary to the evidence; and it is stated in the bill of exceptions that the only evidence to support it is that upon which finding No. 5 was founded, and that there was no evidence in the case to support a more general finding as to the falling of the building before the fire. The question, therefore, is: Do the matters recited in finding No. 5 support the finding that the building was a fallen building, within the meaning of the policy? It is unnecessary to repeat the matters detailed in that finding, and comment on them at length. Our conclusion is, that they do not show that the building had fallen before the fire occurred. A portion of the building had fallen, but the larger portion—more than three-fourths—was standing, and it was not a fallen building within the meaning of the thirteenth condition of the policy.

The second condition, which is "that in case of any change by which the degree of risk is increased, without the written consent of the company, this policy shall be null and void," has reference only to a change produced by the act of the insured; such a change as the company could consent to, upon the application of the insured, and not to one occasioned by accident, or a cause over which the insured had no control.

Judgment and order reversed, and cause remanded for a new trial.

CROCKETT, J., and McKINSTRY, J., dissenting:

We dissent, on the ground that in our opinion the building, before and at the time of the fire, was a fallen building within the true intent of the thirteenth condition of the policy.