ANGIER *et al.* v. WESTERN ASSURANCE CO.

1. Where an insurance company made no objection to the sufficiency of proofs of loss until 18 days after their receipt, and 5 days after expiration of the time in which such proofs were required to be furnished, and failed to explain such delay, any defect in such proofs was waived, under Comp. Laws, § 4178, providing that "all defects in a notice of loss," or in preliminary proof thereof, which the insured might remedy, and which the insurer omits to specify to him,. without unnecessary delay, as grounds of objection, are waived."

2. Where an insurance company, having full knowledge of the origin of a fire, on calling for a more specific statement as to such origin, denied liability under its policy, it thereby waived further proofs of loss.

3. The use of kerosene oil in kindling a fire in a cook stove, on only one occasion, though a negligent act under the circumstances disclosed, did not "increase the hazard," in the sense in which such term is used in a policy providing that "the entire policy * * * shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured."

4. A party who has submitted the case to the court on motion to direct a verdict in his favor cannot say that there were facts to be submitted to the jury.

(Opinion filed June 16, 1897.)

Appeal from circuit court, Minnehaha county. Hon. Jos. W. Jones, Judge.

Action upon a policy of fire insurance. Plaintiff had judgment, from which, and from an order denying its motion for a new trial, defendant appeals. Affirmed.

The facts are stated in the opinion.

*McDonald & Fauntleroy* and *C. S. Palmer*, for appellant.

It was the duty of the insured to give in the proofs of loss full information, as called for by the policy. Blakely v. Ins.

Co., 20 Wis. 217; Erwin v. Ins. Co., 24 Mo. App. 150; Wood, Fire Ins., §§ 411, 415. The use of kerosene oil in kindling a fire in a stove rendered the policy void. Gunther v. Ins. Co., 116 U. S. 113, S. C., 14 Am. & Eng. Corp. Cas., 567; Turnbull v. Ins. Co., 34 Atl. 875; School Dist. v. Ins. Co., 7 S. D. 458, 64 N. W. 528; First Congregational Church v. Insurance Co., 33 N. E. 572, 22 Ins. Law Jnl., 550.

U. S. G. *Cherry*, for respondent.

Making proof of loss after a waiver of proof on part of defendant does not preclude the plaintiff from availing himself on the trial of the benefit of the waiver. Purcell v. Ins. Co., 64 N. W. 943. Any defects in the proofs of loss not specified and pointed out by the insurer without unnecessary delay are waived. Comp. Laws, §§ 4177-8; Peet v. Ins. Co., 1 S. D. 462, 47 N. W. 532. The use of the kerosene did not constitute such a change of risk or increase of hazard as is contemplated by the policy. Comp. Laws, § 4175; Waters v. Ins. Co., 11 Pet. 213; Book 9, L. Ed. 691; Gates v. Ins. Co., 5 N. Y. 469; Ins. Co. v. Glasgow, 41 Am. Dec. 651; Gove v. Ins. Co., 48 N. H. 43; Billings v. Ins. Co., 20 Conn. 138; Henderson v. Ins. Co., 43 Am. Dec. 176; Perrin v. Ins. Co., 38 Am. Dec. 728; Ins. Co. v. Perisot, 35 Oh. St. 35; 1 Wood on F. Ins., §§ 108, 274; Matthews v. Ins. Co., 13 Barb. 245; St. John v. Ins. Co., 1 Duer 381; Smith v. Ins. Co., 65 N. W. 236.

CORSON, P. J. This is an action upon a fire insurance policy. A verdict was directed for the plaintiffs, and the defendant appeals. The complaint is in the usual form, and contains among other things, the following allegations: "That on or about the 24th day of April, 1895, the said defendant, by and through his duly authorized officers and agents, denied and disclaimed all liability whatsoever under said policy, and refused to pay the same or any part thereof. * * * That, immediately after said fire and destruction of said property, the plaintiffs gave said defendant due notice, and thereafter made, executed

and delivered to the defendant due and regular proof of said fire and loss, which proof was made and delivered on the 8th day of May, A. D. 1895, and was in words and figures following, to-wit:" The answer of defendant admits that proofs of loss were furnised, but denies that the plaintiffs complied with the terms and conditions of said policy; and it alleges that, upon receipt of proofs of loss, "it immediately objected to the same, and notified the said plaintiffs that they were insufficient, and did not comply with the terms of the said policy, in that they did not state the knowledge and belief of said insured as to the origin of said fire, and that the plaintiffs refused and neglected to furnish other proofs. And, for a second defense to said cause of action, the defendant alleges, in effect, that the plaintiffs caused the loss of the building by using kerosene oil in making a fire upon the insured premises, and that, by reason of said unlawful acts of the said plaintiffs, the hazard and damages to said property, being destroyed by fire, was greatly increased by said means and acts, and that it was by reason of such unlawful acts that the building was destroyed by fire. It will thus be seen that the defendant bases its defense to plaintiffs' action upon two grounds, namely, failure to furnish proper proofs of loss, and increase of hazard by reason of the use of kerosene oil on the premises in the manner detailed in the answer. The two questions will be considered in the order above named.

The proofs of loss were forwarded within the proper time, and stated that "a fire occurred on the 24th day of March, A. D. 1895, * * * and originated as follows, viz.: Caught from stove." The policy provides that proofs of loss shall state "the knowledge and belief of the insured as to the time and origin of the fire." Appellant contends that this statement was insufficient. Plaintiffs make three answers to appellant's contention: (1) They insist that the statement in the proofs of loss was sufficient. (2) That the plaintiff's had, prior to the proofs of loss being forwarded, made a full and complete statement of all the facts relating to the origin of the fire to the

duly authorized agent of the defendant. (3) The defendant had waived proofs of loss by the declaration of their authorized agent, that the company absolutely refused to pay the loss, and by failure to notify the plaintiffs, within a reasonable time after the receipt of the proofs of loss, that the defendant objected to them. The building was destroyed by fire, as will be seen, March 24, 1895, and the proofs of loss were forwarded by mail May 8, 1895, and were received by the defendant May 10th. The defendant made no objection to these proofs until May 28th, 18 days after their receipt, and five days after the expiration of the sixty days in which proofs were to be furnished. Section 4178, Comp. Laws, provides: All defects in a notice of loss, or in preliminary proof thereof, which the insured might remedy and which the insurer omits to specify to him, without unnecessary delay, as grounds of objection, are waived." There was no evidence offered to explain the delay in making the objection to the proofs in this case, and a delay of 18 days, unexplained, must be held to be unnecessary delay. The defect, if any, in the proofs, was waived, and the proofs were properly admitted in evidence. Again, it clearly appears, both from the evidence of plaintiff Stevens and the letter calling for a more specific statement as to the origin of the fire, that the authorized agent of the defendant had denied the liability of the defendant for the loss. In the letter of May 28th, Mr. Crandall, writing for the company, says: "You are further advised that if the verbal statement made to me, in the presence of Mr. Allen and his clerk, regarding the origin of the fire, is true, to-wit, that it originated by pouring kerosene oil into the stove in which a fire had been started,' then and in that case this company denies any and all liability under said policy, and you can commence your action to recover as soon as you think best." The company therefore had full knowledge of the origin of the fire, and also, by its denial of liability, waived further proofs of loss.

The second defense is based upon the following stipulation in the policy: "This entire policy shall be void * * * if

the hazard be increased by any means within the control or knowledge of the insured, * * * or if (any usage or custom of trade or manufacture to the contrary notwithstanding) there be kept, used, or allowed on the above described premises, * * * phosphorus or petroleum, or any of its products of greater inflammability than kerosene oil of the United States standard (which last may be used for light, and kept for sale according to the law, but in quanties not exceeding five barrels provided it be drawn and lamps filled by daylight, or at a disance not less than ten feet from artificial light." Sec. 4175, Comp. Laws, provides: "An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of his agents or others." The facts in regard to the origin of the fire are thus stated by the plaintiff Stevens on cross examination, and are undisputed: "I took a tomato can, maybe two-thirds or half full of kerosene oil, and put some of the oil on the kindling. I turned to strike a match to set it afire. I had on a pair of celluloid cuffs, and the flame caught on my cuffs, and in a moment they blazed up. I had the can in my left hand and it fell on the floor, and the fire caught in the stove the same time. I rushed out and tried to get my coat off. Q. And the whole thing caught fire and burned up? A. Yes. Q. How much oil would that tomato can hold? A. A pint or so. * * * Q. You put the oil on the wood, and struck a match for the purpose of lighting this coal oil? A. Yes, Sir. Q. And it fell on your celluloid cuff you say? A. Yes, sir. Q. And that set fire to the cuff, and the fire fell down on the oil in the stove? A. Yes, sir." As will have been observed, there is no clause in the policy prohibiting the plaintiff from keeping kerosene oil upon his premises to the extent of five barrels, United States standard, and there is no evidence that the oil used by plaintiff was below the prescribed standard. The quantity on hand at the time of the fire was less than one gallon. In view of the stipulation in the policy, the provisions of the statute, and the evidence, it is

somewhat difficult to comprehend the theory of the defendant. It seems to be contended that the kerosene oil, used in the manner testified to by the plaintiff Stevens, increased the hazard, and therefore relieved the defendant from liability. Undoubtedly, the use of the kerosene in the manner detailed by the witness was a careless and negligent act, but it was not such an act as is understood by the term "increase of hazard." The stipulation of the policy is that "the entire policy * * * shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured." Keeping kerosene upon the premises in no manner violated the stipulations of the parties, and could not therefore be held to constitute an increase of the hazard, within the meaning of the policy. The term "increase of hazard" denotes an alteration or change in the situation or condition of the property insured, which tends to increase the risk. These words imply something of duration, and a casual change of a temporary character would not ordinarily render the policy void, under the stipulations therein contained. First Congregational Church v. Holyode Mut. Fire Ins. Co., 33 N. E. 572, 158 Mass. 475. In that case the supreme court of Massachusetts held the use of naphtha (the use or keeping of which on the insured premises was prohibited by the policy) for a period of a month, in burning paint from the outside of a wooden church, and causing the burning of the church, constituted such a change or alteration, and was sufficiently long continued to be deemed a change in the situation or circumstances affecting the risk. In Lyman v. Insurance Co., 14 Allen, 329, three weeks was held sufficient.

In the case at bar the contention of counsel for appellant that the use of kerosene at only one time, in the manner detailed constituted an increase in the hazard, in the sense in which that term is used in the policy, is not tenable. It, as we have said, constituted negligence on the part of the plaintiffs, but did not increase the hazard in the sense that the term is used in the policies of insurance. But as we have seen, under the provi-

sions of our statute; neither the negligence of the insured nor of his agents or others exonerates the insurer from liability. Comp. Laws, § 4175. This section of the Civil Code, as appears from the revisor's notes to the corresponding provision of the Code prepared for the state of New York, is based largely upon Mathews v. Insurance Co., 11 N. Y. 9; Gates v. Insurance Co., 5 N. Y. 469; Walker v. Maitland, 5 Barn. & Ald. 171; Waters v. Insurance Co., 11 Pet. 213. In the latter case the supreme court of the United States, speaking by Mr. Justice STORY, says: "This question has undergone many discussions in the courts of England and America, and given rise to opposing judgments in the two countries. As applied to policies against fire on land, the doctrine has for a great length of time prevailed that losses occasioned by the mere fault or negligence of the assured or his servants, unaffected by fraud or design, are within the protection of the policies, and, as such, recoverable from the underwriters. It is not certain upon what precise grounds this doctrine was originally settled. It may have been from the rules of interpretation applied to such policies containing special exceptions, and not excepting this; or it may have been, and more probably was, founded upon a more general ground, that, as the terms of the policy covered risks by fire generally, no exception ought to be introduced by construction, except that of fraud of the assured, which, upon the principles of public policy and morals, was always to be implied. It is probable, too, that the consideration had great weight that otherwise such policies would practically be of little importance, since comparatively speaking, few losses of this sort would occur which could not be traced back to some carelessness, neglect, or inattention of the members of the family." In Gates v. Insurance Co., *supra,* the court of appeals of New York use the following language: ' But another question arises upon the evidence offered, namely, whether a loss occurring from the gross carelessness and negligence of the insured, his servants, or others, is within this policy. There can

be no doubt that one of the objects of insurance against fire is to protect the insured from loss, as well against his own negligence as that of his servants and others; and therefore the simple fact of negligence in either, however great in degree, has never been held to be a defense in such a policy." The case of Insurance Co. v. Glasgow, 8 Mo. 713, was a case closely analogous to the one at bar. The sixth plea interposed to the declaration was as follows: "The sixth plea avers that, just before the loss in the declaration mentioned, the plaintiffs, their servants and agents, caused the said steamboat to be put on a dock by means of which dock the boat was raised out of and above the surface of the river, and so continued until the loss; and, while the boat was in that situation, the plaintiffs, their servants and agents, caused a fire to be made and kept in a stove on the deck of the boat, and caused large quantities of picked oakum to be placed and spread upon the deck of the boat, about and near the fire so made and kept by the plaintiffs, their servants and agents, whereby and by means whereof the peril and danger of consuming, burning and destroying said boat by fire was enhanced and increased, without the knowledge privity or consent of the defendants, contrary to the tenor and effect, true intent, and meaning of the policy." In one or more of the other pleas it was alleged that the oakum so placed near the stove caught fire, and thereby caused the burning of the boat. The court held that the facts stated in the several pleas constituted no defense to the action. In that case the prior decisions were fully reviewed in a very able and exhaustive opinion. Since the decision of Walker v. Maitland, *supra*, in England, in 1821, and Waters v. Insurance Co., *supra*, in this country, in 1837, the doctrine laid down in those decisions, as applied to fire insurance, has been regarded as the law. Billings v. Insurance Co., 20 Conn. 139; Perrin's Adm'rs v. Insur-Co., 11 Ohio 147.

The facts in the case at bar were undisputed, and we think the court properly directed a verdict in favor of the plaintiff.

The defendant suggests that, upon the question of whether or not there is an increase of hazard, the case should have been submitted to the jury, but we are of the opinion that there was no evidence to submit to the jury upon this question. If, however, we are wrong in this conclusion, there was no request on the part of defendant that the case should be submitted to the jury; and, having moved the court to direct a verdict in its favor, it submitted the case to the court upon both fact and law and it cannot now be heard to say that there were facts to be submitted to the jury. Yankton Fire Ins. Co. v. Fremont, E. & M. V. R. Co. 7 S. D. 428, 64 N. W. 514; Grigsby v. Telegraph Co., 5 S. D. 561, 59 N. W. 734. The judgment of the circuit court and order denying a new trial are affirmed.