[L. A. No. 6275.   In Bank.—March 13, 1920.]

### EDWARD ROSSINI, Appellant, v. SAINT PAUL FIRE AND MARINE INSURANCE COMPANY, etc. (a Corporation), Respondent.

[1] Fire Insurance Law—Action on Policy—Falling of Material Part of Building—Inconsistent Findings.—In an action on a fire insurance policy, a finding that all of the property described in the policy was destroyed by a bomb or other explosion and that a material part of the building fell at the time of the explosion is inconsistent with a finding that a material part of the building fell as the result of the fire, and will not support a judgment in favor of the defendant under the explosion exemption clause of the policy.

[2] Id.—Explosion Causing Falling of Building—Damage from Fire Ensuing on Explosion—Liability of Insurer.—Where the contract of insurance contains a "fallen building" clause, and also a clause exempting the company from liability for loss caused by an explosion of any kind unless fire ensues, and in that event limiting the liability to the damage caused by the fire only, the company is liable for the damage resulting from a fire ensuing upon an explosion, even though the explosion causes the building to fall.

[3] Id.—Time of Explosion—Liability of Insurer.—Under the "explosion exemption" clause of the policy, if the explosion preceded the fire, plaintiff would be entitled to recover for the damage resulting from the fire alone; on the other hand, notwithstanding the destructive effect of an explosion, the whole loss would be a

2. Fall of building clause in fire insurance policies, notes, 32 L. R. A. (N. S.) 604; L. R. A. 1917F, 1064.

3. Explosion clause in fire insurance policies, note, 32 L. R. A. (N. S.) 607.

loss by fire within the meaning and protective purpose of the policy if the explosion occurred after the commencement of the fire and was a resulting incident of the fire.

[4] Id.—Exemption Clause—Burden of Proof.—Where a fire insurance policy exempts the insurer from liability for loss or damage resulting from explosion, the insurer has the burden of proving that the loss or damage falls within the exception, and if such burden is sustained, and it is shown that the explosion preceded the fire, the insurer is then called upon to prove the extent of his loss or damage.

[5] Appeal—Judgment—Findings—Inference of Ultimate Facts.—While the findings of the trial court are to receive such a construction as will uphold rather than defeat its judgment and from the facts found ultimate facts may be inferred in support of the judgment, it is not within the province of the appellate court to infer from the findings ultimate facts which would support the judgment when such facts do not necessarily follow from the facts actually found.

[6] Id.—Action on Policy—Sequence of Fire and Explosion—Absence of Finding—Effect of.—In an action on a fire insurance policy exempting the insurer from liability for loss or damage resulting from an explosion, a finding that all the insured property was destroyed by an explosion will not support a judgment for the insurer, where it was also found that a material part of the building fell as the result of the fire, and there was no finding as to the sequence in which the fire and explosion occurred.

[7] Id.—Meaning of Word "Premises."—The word "premises" as employed in fire insurance policies means no more than the insured building or the building which contains the insured property, and cannot be held to be coextensive with the lot upon which the building is constructed or a lot contiguous thereto.

[8] Id. — Gasoline Clause — Keeping of Excess Amount — Finding Unsupported by Evidence.—In an action on a fire insurance policy providing that the insurer shall not be liable for loss or damage occurring while there is kept, used, or allowed on the premises gasoline exceeding one quart, the finding that at the time of the destruction of the insured property there was kept, used, and allowed gasoline in excess of such amount is not sustained where the evidence shows that the tank which contained the gasoline was situated on a separate lot six feet from the insured building, fourteen feet below the surface, and in no way connected with the building.

8. What constitutes "keeping," "storing," "using," etc., of prohibited articles within fire insurance policy, note, Ann. Cas. 1918D, 294.

[9] Id.—"Increase of Hazard"—Meaning of Term.—The term "increase of hazard" denotes an alteration or change in the situation or condition of the property insured which tends to increase the risk, and ordinarily refers only to such hazard as results from physical changes in the insured property after the issuance of the policy.

[10] Id.—Continuance of Existing Use—Hazard not Increased.—The policy is issued to protect the insured against existing risks, which are contemplated and covered by the premiums, and, in the absence of fraud or concealment, the hazard in respect to the risk assumed cannot be enhanced or enlarged by a mere continuation of the conditions and uses existing at the time the policy was issued.

[11] Id.—Increase of Hazard—Evidence—Burden of Proof.—The burden is on the insurer to plead and prove affirmatively that there has been a violation of the provision against increasing the hazard.

[12] Id. — Means not Within Control of Insured — Burden of Proof.—Under a clause providing that the insurer shall not be liable for loss or damage occurring while the hazard is materially increased by any means within the control of the insured, the defendant, in an action on the policy, fails to sustain the burden of proof under its defense of material increase of hazard where it appears from the evidence that the plaintiff was not the owner of, nor in the control of the use of, a gasoline tank situated on a lot about six feet from the insured premises at the time the policy was issued or at any time thereafter.

[13] Id.—Right of Insured to Sue—Effect of Assignment.—The right of an insured to sue on a policy is not lost by an assignment made prior to the institution of the action of the sums due under the policy to a third party, where the assignment only purports to create an agency under which the assignee was empowered to adjust the claim and apply the proceeds in part settlement of debts owing by the insured.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Fred H. Taft, Judge.   Reversed.

The facts are stated in the opinion of the court.

Carter & Torchia for Appellant.

W. W. Hindman for Respondent.

LENNON, J.—The plaintiff in this action sought to recover a loss alleged to have been occasioned by fire under a policy of insurance, standard in form, issued to him by the

CLXXXII Cal.—27

defendant, and which covered and carried insurance in the sum of one thousand dollars on a stock of general merchandise and four hundred dollars on household furniture. The policy declared that the insured property was contained in a frame building described as being situated at 2104 East Ninth Street, in the city of Los Angeles, and the complaint averred that the insured property was all contained in the same building at the time of the fire. The defendant denied liability upon the ground that it was exempted therefrom pursuant to the provisions of the policy because (1) the property insured was destroyed by the explosion of a bomb or other explosive substance, the exact nature of which was unknown to defendant; (2) the building in which the insured property was located fell at the time of the explosion and the falling was not the result of fire. As a further defense to the action, defendant pleaded that the plaintiff, in violation of the terms and conditions of the policy, prior to the fire and at the time of the fire, kept, used, and allowed on the "premises" described in plaintiff's complaint and in the policy of insurance, gasoline in excess of one quart, to wit, one hundred or 150 gallons thereof, and that, by reason thereof, "the hazard in respect of said fire was thereby materially increased within the control of said insured." Upon the issues thus framed the trial court, save as to the claim that a material part of the building did not fall as the result of fire, found in favor of the defendant, entering its judgment accordingly, and plaintiff appeals.

The clauses of the contract of insurance upon which the defense of the defendant is dependent are these:

(1) "This company will not be liable for loss . . . unless fire ensues, (and in that event for damage by fire only), by explosion or any kind of lightning.

(2) "Unless otherwise prescribed by agreement, . . . if the building or any material part thereof fall, except as a result of fire, all insurance by this policy on such building, or its contents, shall immediately cease.

(3) "Unless otherwise provided by agreement . . . this company shall not be liable for loss or damage occurring (a) while the hazard be materially increased by any means within the control of the insured . . . (e) while there be kept, used or allowed on the described premises . . . gasoline . . . exceeding one quart."

The trial court, among other things, found as a fact that "all of the property described in said insurance policy was destroyed by a bomb or other explosion and that a material part of the building wherein said property was kept fell at the time of said explosion." Among the conclusions of law purporting to have been deduced from the foregoing findings of fact is the misplaced finding of fact. "That a material part of said building fell as the result of said fire." [1] It is manifest that the latter finding is in conflict with the preceding and properly placed finding that a material part of the building fell "at the time of the. explosion." While a material part of the building might have fallen from the combined effects of the explosion and the fire, it does not necessarily follow that the explosion and the fire occurred simultaneously or that both did in fact contribute simultaneously to the falling of a material part of the building. If they did, then the findings should have clearly and unequivocally shown that fact. On the other hand, if it was the purpose of the trial court, as counsel for respondent suggests, to find, as might have been consistently done, that a material part of the building fell at the time of the explosion and *not* as the result of fire, the fact remains that the trial court did not so find, and, of course, not being permitted to make or unmake findings, our consideration of the case must be controlled by the findings actually made. Accentuating the inconsistency in the findings under discussion is the fact that the finding that a material part of the building fell as the result of fire is directly opposed to the exemption claimed under the "fallen building" clause of the contract of insurance and, consequently, cannot be rightly resorted to in support of the judgment in favor of the defendant.

Even if these findings were capable of reconciliation, nevertheless, they will not suffice to warrant and support a judgment for the defendant grounded upon either the "explosion" or "fallen building" clauses of the contract of insurance. [2] Where the contract of insurance contains a "fallen building" clause, and also a clause exempting the company from liability. for loss caused by an explosion of any kind unless fire ensues, and in that event limiting the liability to the damage caused by the fire only, it is the settled rule that the company is liable for the damage result-

ing from a fire ensuing upon an explosion even though the explosion cause the building to fall. (*Leonard* v. *Orient Ins. Co.*, 109 Fed. 286, [54 L. R. A. 706, 48 C. C. A. 369]; *Dows* v. *Faneuil Hall Ins. Co.*, 127 Mass. 346, [34 Am. Rep. 384]; *Davis & Co.* v. *Insurance Co. of North America*, 115 Mich. 382, [73 N. W. 393]; 1 Clement on Fire Insurance, p. 129.)

[3] Under the "explosion exemption" clause of the policy, if the explosion preceded the fire, plaintiff would be entitled to recover for the damage resulting from the fire alone; on the other hand, notwithstanding the destructive effect of an explosion, the whole loss would be a loss by fire within the meaning and protective purpose of the policy if the explosion occurred after the commencement of the fire and was a resulting incident of the fire. (*German American Ins. Co.* v. *Hyman*, 42 Colo. 156, [16 L. R. A. (N. S.) 77, 94 Pac. 27]; 14 R. C. L., p. 1218; 1 Clement on Fire Insurance, p. 123, and cases cited.) [4] The burden of proof under the "explosion exemption" clause of contracts of insurance devolves as follows: There having been shown the execution of a contract, the occurrence of a fire with a resulting loss, and notice to the insurer, if the insurance company claims exemption by reason of the breach of a proviso or condition subsequent, the burden rests upon the company to prove that a loss, or part thereof, falls within one of the prohibitive clauses of the policy. In other words, the company must plead and prove the exception or breach which it sets up as defeating plaintiff's *prima facie* right of recovery. If such burden is sustained and the case proved, for example, to be within the explosion exemption clause by a showing that the explosion occurred first in point of time, plaintiff is then called upon to prove the extent of damage, if any, suffered from the subsequent and resulting fire. (*German American Ins. Co.* v. *Hyman, supra; Western Assur. Co.* v. *J. H. Mohlman Co.*, 83 Fed. 811, [40 L. R. A. 561, 28 C. C. A. 157].) Under the facts of this case it thus became the duty of defendant to show that the explosion preceded the fire. For this reason, the mere finding that all of the insured property was destroyed by an explosion is not, in and of itself, sufficient to support the judgment upon the theory that the loss came within the explosion exemption clause of the contract of insurance. It is an undis-

puted fact in the case that an explosion did occur, and, consequently, the pivotal point of the controversy is involved in the question whether the explosion preceded or followed the fire, for, upon the determination of that question must depend the determination of the corelated question of segregating the loss suffered by fire from that resulting from the explosion alone. Therefore the findings as made are vitally defective in not disclosing the sequence in which the fire and explosion occurred. This is so because, as we have seen, the plaintiff's right to recovery and the defendant's obligation to indemnify plaintiff for any loss resulting from fire is materially affected by the determination as to whether the explosion which destroyed the goods occurred prior to or subsequent to the fire, and, consequently, a specific finding on this phase of the case should have been made.

[5] In arriving at this conclusion we are not unmindful of the general rule that "the findings of the trial court are to receive such a construction as will uphold rather than defeat its judgment," and that from the facts found ultimate facts may be inferred in support of the judgment. (*Breeze v. Brooks,* 97 Cal. 72, 77, [22 L. R. A. 257, 31 Pac. 742].) Nevertheless, it is not within the province of this court to infer from the findings ultimate facts which would support the judgment when such facts do not necessarily follow from the facts actually found. (*Emmal* v. *Webb,* 36 Cal. 197; *Bull* v. *Bray,* 89 Cal. 286, [13 L. R. A. 576, 26 Pac. 873]; *Estate of Benton,* 131 Cal. 472, [63 Pac. 775]; *Holzheier* v. *Hayes,* 5 Cal. Unrep. 965, [52 Pac. 838]; *Ellis* v. *Bonebreak,* 180 Cal. 168, [179 Pac. 893].) [6] The finding that the goods were destroyed by an explosion and that a material part of the building fell at the time of the explosion does not necessitate the inference that the explosion preceded the fire. *Non constat,* but that the explosion may have followed the fire, and, if that be so, the explosion, even though it were the direct cause of the entire destruction of the insured property, would itself have resulted from the fire, and would, therefore, be an incident of the fire, which fire, in such case, must, in the last analysis, be held to be the agency which destroyed the insured property.

Furthermore, the finding that *all* of the insured property was destroyed by an explosion is not supported by any evidence, directly or inferentially. The evidence shows that there were no witnesses to the inception of the fire and that the witnesses who first discovered that the building was on fire were roused from their sleep by the noise of an explosion. They immediately looked out of the windows of their apartments and saw the building on fire. The fire seemed to them to be burning from the front of the building toward the rear thereof. One witness stated that when she first saw the fire there "didn't seem to be any frame standing." The following morning portions of the front of the building were found, unburned, scattered about the street, intermingled with some merchandise which was partially burned. By the time that the witnesses were able to secure an unobstructed view of the fire, about three minutes after the noise of the explosion, the entire structure was burning rapidly. None of the witnesses knew whether the building took fire prior or subsequent to the explosion. While, as stated, there was some testimony that a comparatively small portion of the merchandise was found in the street subsequent to the fire, partially burned, on the other hand plaintiff testified that the merchandise (save that found in the street), and the household furniture, located in the living-rooms in the rear of the store, were all destroyed by fire. This testimony of the plaintiff stands practically uncontradicted. In this situation of the evidence, the trial court might have been justified in finding that a portion of the merchandise was destroyed by the explosion, but certainly there was no justification for the finding that *all* of the insured property was destroyed by the explosion.

Upon the issue of defendant's exemption from liability because of the alleged violation of the clauses of the policy concerning the keeping of gasoline and the increase of hazard, the trial court found: "That at the time of the destruction of said property as above mentioned, and for some days prior thereto, there was kept, used, and allowed upon the premises described in plaintiff's complaint and said policy of insurance, gasoline in excess of one quart, to wit, 150 gallons thereof, and that no agreement consenting thereto was indorsed on or added to said policy of insur-

ance." From this finding the trial court deduced the conclusion of law that plaintiff violated the conditions of the policy of insurance and that "the hazard in respect to said risk was thereby materially increased."

In considering the scope and effect of these findings and conclusions, reference must be had to the terms of the policy and the allegations of the complaint. The only "premises" there described are "the story frame building, with roof, now and while occupied as general merchandise and situated No. 2104 East Ninth Street in Los Angeles, California." Admittedly the insured property was situated exclusively in these premises at the time of the issuance of the policy and at the time of the fire. [7] The word "premises," as employed in fire insurance policies, means no more than the insured building or the building which contains the insured property, and cannot be held to be coextensive with the lot upon which the building is constructed or a lot contiguous thereto. (*Rau* v. *Westchester Fire Ins. Co.*, 36 App. Div. 179, [55 N. Y. Supp. 459]; *Fireman's Fund Ins. Co.* v. *Shearman*, 20 Tex. Civ. 343, [50 S. W. 599]; 2 Clement on Fire Insurance, p. 334.)

Upon this phase of the case the record shows that the evidence was all to the effect that the tank which contained the gasoline was situated on a separate lot six feet from the building described in the complaint and in the policy of insurance, fourteen feet below the surface of the ground, and in no way connected with the said building. [8] This being so, there is no escape from the conclusion that the finding that there was kept upon the premises, which contained the insured property, gasoline in excess of the quantity permitted by the policy is not supported by the evidence, and, as a consequence, this finding will not support the conclusion of law deduced therefrom that there was a violation of the provision of the policy concerning the keeping of gasoline on the "premises."

This brings us to a consideration of the finding—misplaced in the conclusions of law—to the effect that the plaintiff materially increased the hazard of the risk insured against by the keeping of gasoline on the premises. This finding is not sustained by the evidence, even though it be assumed in aid of the finding, as counsel for the defendant would have us do, that the court employed the word "premises" with

the purpose of designating and including property of the plaintiff other than the building which contained the insured property, and that, therefore, the finding in question must be interpreted as meaning that the keeping of a large quantity of gasoline upon the contiguous premises violated the "increased hazard" clause of the contract. The answer to this is that the keeping of gasoline upon the contiguous premises cannot be held to have effected a forfeiture under the "increased hazard" clause of the policy unless it was in fact an "increase" of hazard over and above that which existed at the time of the issuance of the policy. [9] "The term 'increase of hazard' denotes an *alteration or change* in the situation or condition of the property insured which tends to increase the risk" (italics are ours), and ordinarily refers only to such hazard as results from physical changes in the insured property after the issuance of the policy. (*Angier* v. *Western Assur. Co.,* 10 S. D. 82, [66 Am. St. Rep. 685, 71 N. W. 761] ; *Hartford Fire Ins. Co.* v. *Dorroh,* 63 Tex. Civ. 560, [133 S. W. 465] ; 4 Joyce on Insurance, sec. 2207.) [10] The policy is issued to protect the insured against existing risks, which are contemplated and covered by the premiums, and, in the absence of fraud or concealment, the hazard in respect to the risk assumed cannot be enhanced or enlarged by a mere continuation of the conditions and uses existing at the time the policy was issued. (*Williams* v. *People's Ins. Co.,* 57 N. Y. 274; *Whitney* v. *Black River Ins. Co.,* 72 N. Y. 117, [28 Am. Rep. 116] ; *Straker* v. *Phenix Ins. Co.,* 101 Wis. 413, [77 N. W. 752] ; 14 R. C. L., p. 1145.) [11] The burden is on the insurer to plead and prove affirmatively that there has been a violation of the provision against increasing the hazard. (*Ritter* v. *Sun etc. Co.,* 40 Mo. 40; *Tischler* v. *California etc. Ins. Co.,* 66 Cal. 178, [4 Pac. 1169] ; *Renshaw* v. *Missouri State etc. Ins. Co.,* 103 Mo. 595, [23 Am. St. Rep. 904, 15 S. W. 945] ; *Greenlee* v. *North British etc. Ins. Co.,* 102 Iowa, 427, [63 Am. St. Rep. 455, 71 N. W. 534] ; *Merrill* v. *Insurance Co.,* 23 Fed. 245; *Transatlantic Ins. Co.* v. *Bamberger,* 11 Ky. Law Rep. 101, [11 S. W. 595] ; 5 Joyce on Insurance, sec. 3777; 7 Ency. of Evidence, 522.) Upon this phase of the case the evidence, briefly stated, is as follows: The policy of insurance was issued December 28, 1915. In July, 1915, plaintiff and one LoBue engaged in the automobile re-

pairing business, which business was conducted in the building adjoining plaintiff's general merchandise store which contained the insured property. In August, 1915, for the purpose of operating a gasoline station, plaintiff and LoBue installed a gasoline tank in the alley between the two buildings, and the board of fire underwriters were notified thereof. Some time in August or September, 1915, plaintiff and LoBue decided to discontinue their joint enterprise and plaintiff assigned all his interest in the automobile and gasoline business to LoBue, including his interest in the gasoline tank. Gasoline was continually kept in the tank from the time of its installation up to and including the time of the fire, and at the time of the fire it contained between one hundred and 150 gallons, having been filled two days before. It was stipulated at the trial that the gasoline was not the cause of the explosion and did not explode. The agent who negotiated the policy knew of the existence of the tank and its purpose prior to the issuance of the policy and the plaintiff "was charged accordingly." In short, the uncontradicted evidence in the present case clearly shows that the use of the contiguous property as a gasoline supply station was not a new condition, but merely the continuation of a condition which, as an element of hazard, was contemplated and covered by the policy at the time of its issuance. It is a conclusive answer to the finding of the trial court upon this phase of the case that the "increased hazard" clause merely prohibits a new and different use of the property, by which the risk is materially increased, from that to which it was applied when the policy was issued, and that the continuance of an existing use, in the absence of warranty against such use or fraudulent representations or concealment, neither of which is alleged in the answer, is not a violation of the contract. (*Whitney* v. *Black River Ins. Co.*, 72 N. Y. 117, [28 Am. Rep. 116].)

It further appears from the evidence that plaintiff was not the owner of, nor in control of the use of, the tank at the time the policy was issued nor at any time thereafter. Soon after the tank was installed and several months before the fire, as previously noted, plaintiff transferred all interest therein to one LoBue. The gasoline was owned by LoBue, who ordered it placed in the tank, and even if it could be said that the continued use of the tank was an in-

crease of hazard, there is no evidence that its use by LoBue was within the control of the plaintiff. [12] Defendant thus failed to sustain the burden of proof under this defense in another important particular, for, according to the wording of the policy, the increase of hazard is only material in giving rise to a forfeiture when the increase is due to "any means within the control of insured." (*Breuner v. Liverpool etc. Ins. Co.,* 51 Cal. 101, [21 Am. Rep. 703].)

The view which we have taken as to the insufficiency of the evidence and findings to warrant a judgment for the defendant under the provisions of the "gasoline" and "increased hazard" clauses of the contract makes it unnecessary for us to discuss and decide the question of whether or not the "increase of hazard" clause of the California standard form fire insurance policy is limited in its operation by section 2755 of the Civil Code, which provides that a contract of fire insurance is not affected by an act even though it increases the risk, unless the act violates the provisions of the policy.

[13] Prior to the institution of the action, plaintiff made an assignment of the sums due under the policy in question to a third party and it is urged that he thereby parted with his right to sue on the contract. The assignment, however, only purports to create an agency under which the assignee was empowered to adjust the claim and apply the proceeds in part settlement of debts owing by plaintiff. The assignee secured no personal interest in the benefits to be derived by collection of the insurance money, all authorized action being on behalf of plaintiff. Plaintiff, therefore, is still the real party at interest and has not lost his right to sue.

The judgment is reversed and the cause remanded for a new trial.

Wilbur, J., Shaw, J., Angellotti, C. J., Lawlor, J., and Olney, J., concurred.