[Civ. No. 7. Fourth Appellate District.—October 18, 1929.]

ROLAND S. WITHEROW, as Administrator, etc., Respondent, v. UNITED AMERICAN INSURANCE COMPANY OF PENNSYLVANIA (a Corporation), Appellant.

Harold C. Morton for Appellant.

Charles D. Swanner for Respondent.

MARKS, J.—This action was brought by plaintiff against defendant to recover the sum of $800, on an insurance policy written by defendant on the property described therein. Plaintiff recovered judgment for $746.91 and defendant appealed.

It appears from the record before us that on April 11, 1923, appellant issued its policy of insurance in the sum of $800 on the building involved, for the term of three years in favor of F. S. McClain, the then owner. The title to the property passed by various conveyances to Carl Marr. It bears the usual indorsements carrying the consent of appellant to these changes of ownership and a mortgage clause dated December 20, 1923, in favor of W. L. Witherow, plaintiff's decedent. On March 13, 1924, Marr conveyed the property to L. A. McCain and W. B. Scott. On June 21, 1924, McCain and Scott conveyed the property to Oscar Cochems and wife. On September 24, 1924, Cochems and wife conveyed the property to G. W. Purkey and wife. On March 20, 1925, Purkey and wife conveyed the property to H. L. Clark, where title remained until November 25, 1925, when the buildings were destroyed by fire. At the time there was $1,336.44 unpaid on decedent's note, which was secured by a deed of trust on the insured premises. Appellant did not consent to any change of ownership after title vested in Marr and the mortgage clause attached to the policy. W. L. Witherow died June 10, 1928, and plaintiff was appointed as administrator of his estate.

Appellant's answer interposed several defenses, which were all abandoned at the trial except one, which asserted

the avoidance of the policy by the changes of ownership by Marr and by his successors in interest without the knowledge and consent of the insurance carrier. This is the sole question presented on appeal as all other facts, including the amount of the loss in the sum of $746.91, were stipulated by the parties at the time of trial.

The trial court found "That the said W. L. Witherow did not have knowledge of the transfer of said real property subsequent to the transfer from W. L. Witherow to Carl Marr and the execution of said trust deed by Carl Marr in favor of W. L. Witherow." Appellant contends that this finding is unsupported by the evidence and is contrary to the evidence and therefore that the judgment must be reversed.

▊ The rule governing the burden of proof in cases of this kind has been laid down by the Supreme Court as follows: That where the plaintiff proves the existence of a contract of insurance, a fire which results in a loss to the insured with due notice or proof of loss, where necessary, to the insurer, and the insurance company seeks to avoid payment by reason of the breach of a proviso or condition contained in the policy, the burden rests upon the insurance company to prove by a preponderance of the evidence, the facts necessary to bring the case within the terms of the proviso or condition under which it seeks to escape liability. (*Rossini* v. *Saint Paul Fire & Marine Ins. Co.*, 182 Cal. 415 [188 Pac. 564]; *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [26 A. L. R. 123, 213 Pac. 42]; *Postler* v. *Travelers' Ins. Co.*, 173 Cal. 1 [158 Pac. 1022].)

▊ Four witnesses were produced by the insurance company in its effort to prove that W. L. Witherow had knowledge of the transfers of title subsequent to ownership by Marr. They were G. W. Purkey and Oscar Cochems, two of the later owners, Dean Collver, collection teller of the Farmers and Merchants Savings Bank of Santa Ana, and Frank L. Weaver, an insurance adjuster, who acted for appellant in investigating the loss. F. D. Drake, at one time local agent for appellant, was called, but was not able to remember any facts material to either side. The record shows that L. A. McCain, one of the owners subsequent to Marr, was present in court, but was not called as a witness.

G. W. Purkey testified that he was the owner of the property, having purchased it from Cochems; that he knew Witherow, but did not remember discussing the property or its ownership with him; that he made his payments to the bank and supposed Witherow knew he (Purkey) owned the property, because he so made the payments.

Oscar Cochems testified that he knew Witherow; that he owned the property; that he never at any time discussed the property with Witherow, and did not remember making any payments to the bank.

Dean Collver's testimony, viewed from the point of view most favorable to appellant, may be summarized as follows: That he was collection teller of the Farmers and Merchants Savings Bank of Santa Ana; that he knew W. L. Witherow very well during his lifetime; that Witherow was a customer of the bank; that he left the note with Collver as an employee of the bank for collection with instructions to collect the installments of $15 per month and deposit them to Witherow's account; that Collver personally made all but a very few of the collections and indorsed the payments on the back of the note when received by him; that the payments were made by different persons from time to time; that he believed that different people owned the property and that his recollection was that Mr. Witherow told him of a Mr. Purkey owning it; that he had difficulty in making the collections at times and sometimes would go to W. L. Witherow and sometimes to others to ascertain who owned the property; that when payments would become delinquent witness would send a notice to the last party he had knowledge of holding it and sometimes would get a notice turned back with the statement "I don't own that property now. I just sold it to somebody else"; that there was a memorandum written on the envelope containing the note "Musselman Lumber Company, G. W. Purkey and H. L. Clark," which was a memorandum of names of persons "who were said to own the property at the time; a memorandum of different people we tried to get money out of as the owner of the property"; that those names were furnished as the names of the supposed owners of the property; that on two or three occasions an agent handling the property for Mr. Witherow might have brought the payments in; that it was

witness' impression that Mr. Purkey, a real estate agent who handled some of the transfers of the property often brought in the money; that it was witness' impression that Purkey owned the property at one time; that when a payment was made it was deposited to the account of W. L. Witherow and a duplicate deposit slip mailed him with the name of the depositor written thereon; that witness could not give the names of any of the depositors which were written upon the slips; that it was the custom of the bank to write the name of the depositor on the duplicate slip mailed to the customer and that he believed the custom had been followed in this case.

Frank L. Weaver testified that he was a fire insurance adjuster and investigated this loss for appellant; that on December 5, 1925, he talked with W. L. Witherow and that Witherow told him that the property had been transferred twice or more after the policy had been written and the mortgage clause attached.

In addition to certified copies of the four deeds effecting the change of title, hereinbefore referred to, we believe that the foregoing presents a fair summary of the testimony offered by appellant upon which it must rely to maintain its contention that the finding of the trial court to the effect that W. L. Witherow had no knowledge of the transfers of the property subsequent to the date of the mortgage clause in his favor was not supported by the evidence and was contrary to the evidence.

It is to be noted that Weaver's conversation with Witherow occurred on December 5th, ten days after the fire. All that Weaver attempted to state in his testimony was Witherow's admission of knowledge of the transfers of title upon that date. He did not attempt to state when Witherow gained that information. From the testimony of this witness there is nothing to prevent the trial court from concluding that Witherow had first learned of the transfers on the day of his conversation with Weaver.

From the testimony of Collver it is clear that he entertained the fixed opinion that the title to the property had changed several times during the interval between the date of the mortgage clause and the fire, and while he was making the collections for Witherow and that he believed Witherow had the same information. Many of the ques-

tions put to Collver by counsel for appellant put the desired answer in his mouth and many more called for his opinions and conclusions, which he gave. It is also clear that part of his testimony was based on a custom of the bank rather than a recollection of the particular transaction. He was not once asked for the substance of any conversation he might have had with Witherow concerning the change of ownership of the property.

■ The mortgage clause imposed upon Witherow the duty of disclosing to appellant "any change of ownership . . . which shall come to the knowledge of said mortgagee," if any duty was imposed upon him. We are considering an instrument which we are justified in assuming was prepared by the insurance carrier and under which it is attempting to escape liability under its insurance policy and work a forfeiture of the same. "It is well established that conditions which provide for a forfeiture of the assured or other persons claiming under the policy are to be strictly construed against the insurance company, and if there is any ambiguity in a policy which may reasonably be solved by either one of two constructions, the interpretation shall be adopted which is most favorable to the assured, or in this particular case to the beneficiary in the deed of trust." (*Welch* v. *British American Assur. Co.*, 148 Cal. 223 [113 Am. St. Rep. 223, 7 Ann. Cas. 396, 82 Pac. 964, 965].) In the case before us the court is not required to give any more liberal interpretation to the language of the mortgage clause than its strict construction requires.

■ Witherow did not have to be a seeker after information. He was required to give such information as came to his knowledge. In cases of this kind, knowledge has been held to be actual information of a fact, and not mere speculation or opinion or constructive notice. "Webster's Dictionary defines knowledge as 'the actual state of knowing; clear perception of fact, truth or duty.' In the Century Dictionary we find this definition: 'The state of being or having become aware of fact or truth; intellectual recognition of or acquaintance with fact or truth.' Knowledge, then, is information as to a fact. Viewing the word 'knowledge' in the clause of the insurance policy in question in light of these definitions, the clause applies where the insured has actual knowledge of the foreclosure proceedings

having been commenced, or notice given of the sale of the property insured under a deed of trust.'' (*Brown* v. *Connecticut Fire Ins. Co.*, 197 Mo. App. 317 [195 S. W. 62, 65].) ''It will be noted that the provision of the policy relied upon is that it shall be void in the event that foreclosure proceedings are commenced or notice of sale given with the knowledge of the insured. . . . Defendant, having prepared this policy and these conditions upon which a right to forfeiture is predicated, must be held to have chosen the words advisedly and must be held to have used the word 'knowledge' as distinguished from constructive notice, advisedly, with the intent to limit the right of forfeiture to those cases in which the insured had knowledge of the commencement of the foreclosure proceedings, or what has been sometimes held equivalent, actual notice. That the word 'knowledge' as used in the contract, means actual knowledge, as distinguished from constructive knowledge or constructive notice, see *Fidelity & Casualty Co.* v. *Gate Nat. Bank,* 97 Ga. 634 [54 Am. St. Rep. 440, 33 L. R. A. 821, 25 S. E. 392]. That knowledge and notice are not synonymous or interchangeable, see Words and Phrases, vol. 5, p. 3911.'' (*Funk* v. *Anchor Fire Ins. Co:*, 171 Iowa, 331 [153 N. W. 1048, 1052].)

█ Where an insurance policy is written in favor of an insured and has attached to it a mortgage clause providing that the loss be payable to the mortgagee as his interest may appear there are, in effect, two separate contracts, one between the insurer and the mortgagor or owner of the property and the other between the insurer and the mortgagee. The mortgagor may lose his right of recovery on the policy without affecting the mortgagee's rights. (*Seccombe* v. *Glens Falls Ins. Co.,* 45 Cal. App. 611 [188 Pac. 305]; *Welch* v. *British American Assur. Co., supra.*)

In the instant case the court must look to the contract between the insurer and the mortgagee to determine their mutual rights, duties, obligations and liabilities.

In the first paragraph of the mortgage clause it is provided that the interest of the mortgagee ''shall not be invalidated by any act or neglect of the mortgagor or owners . . . nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy.'' It will be noted that in the foregoing the insurance carrier

agreed with the mortgagee that change of ownership would not bar the right of the mortgagee to recover in case of loss.

In the third paragraph of the mortgage clause denominated therein as ''Condition Two,'' we find the following:

''The mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee), and unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.''

We assume that this paragraph seems to place on the mortgagee the duty of reporting a change of ownership coming to his knowledge. There follows the phrase ''and unless permitted by this policy it shall be noted thereon,'' which evidently refers to a change of ownership coming to the knowledge of the mortgagee or trustee. Then follows a provision requiring the mortgagee or trustee to pay the premium for such increased hazard, followed by the words of forfeiture. As we have seen, paragraph one of the mortgage clause directly provides that a change of title or ownership shall not affect the right of the mortgagee to recover in case of loss. While we do not find it necessary to so hold, it might be urged with considerable force that in so far as. the mortgagee is concerned, the covenant in paragraph one of the mortgage clause against forfeiture in the event of change of title or ownership is controlling over the rather ambiguous language in ''Condition Two,'' under the terms of which the forfeiture is urged in this case, especially in view of the well-settled rule that all ambiguities in a policy must be resolved in favor of the insured and against the insurer.

We have now to determine what reasonable deductions the trial court could make from the evidence before it upon the, question of whether or not W. L. Witherow had knowledge of the change of title of the insured property after his mortgage clause was issued by the insurance company. Dean Collver was collection teller of the bank with which the note was left for collection. If support of appellant's contention is found, it must be in the testimony of this witness. The trial was held two years and two months after the date of

the fire and about four years after the note was first left with the bank for collection. While the witness was evidently doing his best to recall the incidents of the transaction, his memory was not very clear on many of its phases. The custom of the bank was relied upon by him to supplement his memory in at least part of his testimony. Collver's primary duty was to receive payments on the note, credit them on the back thereof and deposit the money to Witherow's account. The trial court evidently concluded that the witness confused the making of payments by different persons with the matter of ownership of the property. He testified that the Musselman Lumber Company was said to own the property at one time and that he tried to get money out of it as an owner, while the record shows that it was not one of the owners. In the absence of any direct evidence of actual knowledge on the part of either Collver or Witherow of change of title, we cannot say that the conclusion of the trial court was contrary to the evidence or not supported by the evidence, as the burden of proving this actual knowledge by a preponderance of the evidence was on appellant.

The Supreme Court in the case of *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [26 A. L. R. 123, 213 Pac. 42, 44], in discussing the weight to be given the findings of the trial court, held as follows:

"This court has frequently held that even though ·all of the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deducted from those facts, there still remains in the case a question of fact to be determined by the jury (or by the trial judge where the case is tried without a jury), and that the verdict of the jury or the finding of the trial judge thereon cannot be set aside by this court on the ground that it is not sustained by the evidence. (*Anderson* v. *Los Angeles Transfer Co.*, 170 Cal. 66 [148 Pac. 212].) In so far as the evidence is subject to opposing inferences it must, upon review thereof, be regarded in the light most favorable to the support of the judgment (*Woodard* v. *Glenwood Lumber Co.*, 171 Cal. 513, 519, 520 [153 Pac. 951]; *Hassell* v. *Bunge*, 167 Cal. 365, 367 [139 Pac. 800]). In reviewing a question of this kind, all inferences reasonably

possible from the evidence favorable to the plaintiff (the prevailing party) must be indulged by this court.''

Judgment affirmed.

Sloane, P. J., and Barnard, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 13, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 16, 1929.

All the Justices concurred.