### IRWIN v. WESTCHESTER FIRE INS. CO.

(Supreme Court, Special Term, Orange County. March 23, 1908.)

1. INSURANCE—INSURABLE INTEREST—EXTINGUISHMENT OF INTEREST.

Until a decree declaring an insured structure a nuisance and directing its removal is actually put into effect by the destruction or removal of the building, the structure continues to be the property of the owner, and her mere promises to abate the nuisance do not deprive her of her insurable interest therein so long as it remains undisturbed upon her land.

2. SAME.

A wooden building within city fire limits was twice held a nuisance in judicial proceedings and ordered to be removed. The owner had delayed removal by the city authorities by promising to remove it herself, but failed to do so. Pending the delay there was a loss by fire, and the owner sued on defendant's policy on the building. The insurance company was not a party to the proceedings holding the building a nuisance. Held, that the maxim of equity that "the law considers that as done which ought to be done" would not operate to deprive the owner of all insurable interest in the building.

**3.** SAME—FIRE INSURANCE — ESTOPPEL TO AVOID POLICY — KNOWLEDGE OF AGENT.

Where an insurance agent to whom application was made for a policy of fire insurance, and who issued it and received the premium, had full knowledge before the policy was issued, not only that it was claimed by some people that part of the structure insured was a public nuisance as in violation of the city ordinance, but also that it had been so declared by court and its removal ordered, and subsequently, while proceedings were being had with his knowledge involving the question whether the part of the structure should be removed as a nuisance, he permitted the policy to remain uncanceled and unchanged, the insurance company was bound by the policy, since the knowledge of the agent was the knowledge of the company, and it could not deny liability upon its policy by claiming the existence of facts rendering it void where it had full knowledge of the facts when the policy was issued.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 968–974.]

**4.** SAME—INCREASE OF HAZARD—CONDEMNATION OF STRUCTURE AS A NUISANCE.

The hazard and danger of damage by fire of an insured structure is not increased by a judgment of a court decreeing it to be a nuisance and ordering its removal.

Action by Frances E. Irwin against the Westchester Fire Insurance Company. Judgment for plaintiff.

R. H. Barnett, for plaintiff.
Leo Levy, for defendant.

TOMPKINS, J. This action was brought to recover upon a $4,000 fire insurance policy, covering the plaintiff's "two and a half story shingled roof frame dwelling, and additions attached, including foundations, and all permanent fixtures for heating and lighting, situate at 153 Grand street, Newburgh, N. Y." The policy, which was in the standard form, was dated April 25, 1905, and was for three years from May 9, 1905, and was issued to the plaintiff by the defendant's agents Shipp & Osborn, of the city to Newburgh. A fire occurred on the 12th day of November, 1906, causing damage to the dwelling and "additions" to the amount of $3,813.41, as found by the jury at the trial; $2,300 being the damage to the "additions," and $1,513.41 the damage to the old or main building.

The defenses urged at the trial, and now, are that by reason of the violations of the charter of the city of Newburgh, and ordinances of the city passed for the purpose of preventing fires, and increase of fire hazard, the building in question had been decreed to be a public nuisance by the judgment of a court of competent jurisdiction, and that the insurance under the terms of the policy had ceased, as the policy was voided (a) by the judgment of the Supreme Court of Orange county entered October 12, 1905; (b) by agreement of the assured to remove and take down the addition; (c) by increase of hazard, by means within the knowledge and control of the assured; (d) that the fire originated by explosion, and the greater part of the damage was done thereby, and, as the plaintiff did not attempt to separate the explosion damage from that by the fire, there can be no recovery; (e) that the policy was voided by reason of the change in the interest, title, or possession of the subject of insurance, by legal process, judgment, and voluntary

act of the insured, and that the addition had ceased to have insurable value as such, and the mass of building material was not covered by the contract.

The facts are substantially undisputed. Prior to December, 1904, the plaintiff had put up a three-story frame addition in the rear of her dwelling house, on Grand street, in the city of Newburgh. In December, 1904, a property owner of the city made application to the Supreme Court at a Special Term for a peremptory writ of mandamus directing the common council of said city to remove the three-story addition from the plaintiff's premises, because it exceeded the width authorized by the provisions of the charter and ordinances of the city of Newburgh governing the erection of frame additions to buildings within the fire limits of said city. In that proceeding, to which the plaintiff was not a party, the court adjudged the "addition" to be in violation of said ordinance, and a nuisance, and directed its removal by the common council. The writ of peremptory mandamus directing the common council to remove the said "addition" was granted on the 3d day of December, 1904. It appears that the city authorities neglected to obey the mandamus, and in the month of April, 1905, the plaintiff brought an action against the city of Newburgh to restrain the removal of the said "addition," and to stay compliance with said mandamus. In September, 1905, judgment in that action was rendered which dismissed the plaintiff's complaint upon their merits; the court finding as matters of fact and law that the "addition" in question was in violation of the city charter and ordinances, and was a public nuisance. In November, 1905, the plaintiff, by petition, asked the common council of the city to delay the enforcement of the writ of mandamus directing the abatement of the nuisance until May 15, 1906, promising that within that time she would remove the nuisance. She did not, however, abate the nuisance within the agreed time, and in July, 1906, a notice was served upon the plaintiff by the corporation counsel demanding that she immediately remove the "addition." Thereafter futile efforts were made on the part of the city authorities to employ men to abate the nuisance. Then proceedings were taken to punish the said authorities for contempt of court for not obeying the directions of the writ of mandamus. Finally, on the 9th day of November, 1906, a contractor in the employ of the city began the demolition of the structure, but before any considerable work was done, in fact, just as it was commenced, he stopped work because the plaintiff had not vacated the "addition." Between November 9, 1906, and the occurrence of the fire, which was on November 12, 1906, plaintiff removed a part of her furniture from the "addition." The defenses (set up in the answer) of fraud, false swearing, and arson were abandoned at the trial; the defendant relying upon the facts hereinbefore stated, in reference to the judicial condemnation of the "addition" as a nuisance, and the decree ordering its removal, and the plaintiff's several promises to relieve the said authorities of the duty of removing said nuisance by abating it herself. The defendant's claim, summarized, being that the building having been condemned as a public nuisance, and its removal having been ordered, and the plaintiff having agreed to take it down several

months before the fire, that the interest, title, and possession of the structure was changed by legal process, or by the voluntary act of the insured, and that the hazard was increased within the knowledge and control of the assured and by her voluntary act, and that the structure, having been legally condemned as a public nuisance, will not for the purpose of insurance under a fire occurring after such condemnation be regarded as a building, and that it would be against public policy to allow the plaintiff to violate the judgment of the court and her agreements thereunder, and to profit by such violations by securing the insurance moneys, and that, the structure having been duly condemned as a public nuisance and ordered to be taken down and removed, the law will consider that done which has been duly ordered to be done, and that the fire having abated the nuisance had purged all the parties, including the plaintiff, of contempt of court, and had relieved the plaintiff and her property of the charge which was lawfully leviable against it as an incident to the abatement of the nuisance, and the carrying out of the court's decree, and that in that manner the fire, instead of causing damage to the plaintiff, really benefited her, and that the fire, having operated to remove and abate the nuisance, cannot afford a basis for a recovery upon the policy.

I fail to find in the able brief submitted by the learned counsel for the defendant any authority supporting their contention respecting the effect upon the plaintiff's insurable interest in the buildings of the proceedings and decrees of the court respecting the character of the building known as the "addition," and adjudging it to be a public nuisance. If the building had been actually removed before the fire, by reason of its having been adjudged a nuisance, or had collapsed or been destroyed, why, then, of course, it follows without argument that there could be no liability under the insurance policy, but, until there was actual physical destruction of the building, the defendant continued to be liable for any damage done by fire, so long as its policy of insurance remained in force. In other words, until the decree of the court was actually in effect by the destruction or removal of the building, and the abatement of the nuisance, the structure continued to be the property of the plaintiff, and her repeated promises to abate the nuisance did not deprive her of her interest therein as owner, so long as it remained upon her land, and was undisturbed. The principle in equity that the law will consider that done which ought to have been done does not apply in this action at law against this defendant, who was not a party in either of the other proceedings or actions affecting this structure. No matter how many judgments or decrees of the court there may have been adjudging the "addition" to be a nuisance, or how many promises the owner may have made to remove the structure, and abate the nuisance, it nevertheless continued to be her property until it was actually removed, or in some substantial manner physically disturbed, and so long as it stood upon the plaintiff's land, attached to and a part of her main building, she had an insurable interest therein.

There is another ground, however, upon which the plaintiff's right to recover seems indisputable. The first order of the court adjudging

the "addition" to be a public nuisance and in violation of the ordinances of the city, and directing its removal, was made early in December, 1904. The policy in question was issued to the plaintiff by the defendant's agents who resided, and had their offices, in the city of Newburgh, on April 25, 1905, nearly five months after the order of the court and the writ of mandamus above referred to was made and granted. The policy specifically covers the "addition" in question, and it is undisputed that Mr. Shipp, of the firm of Shipp & Osborn, the defendant's agents, who issued the policy, had full knowledge of the proceedings in the Supreme Court against the common council of the city, which culminated in the order of December 3, 1904, declaring the "addition" to be a public nuisance, and ordering the common council to remove and abate it. And it appeared that on two occasions prior to the issuance of the policy in question the same Mr. Shipp, who was one of the defendant's agents, and who issued the said insurance policy, talked with the plaintiff's daughter in reference to the said "addition," and the proceedings that were then pending to accomplish its removal, and expressed his sympathy with the plaintiff, and advised her not to take down the "addition"—that it would never be removed, and that she need not worry about the matter—that, if the "addition" was a nuisance, then the city was filled with nuisances, because there were many similar and larger "additions" of the same character within the fire limits. So that it appears without·contradiction that the defendant's agents to whom application was made for the insurance policy, and who issued it, and who received the premium therefor, and which policy expressly covered the "addition " in question, had full knowledge, before the policy was issued, not only that it was claimed on the part of some that the "addition" was a public nuisance, and in violation of the city ordinances, but that it had been so declared by the Supreme Court and its removal ordered; and that with that knowledge the defendant's agents accepted the risk, issued the policy, and received the premiums. After issuing the policy, and through the balance of the year 1905, and all through the year 1906, while the subsequent proceedings and actions were being had involving the question whether or not the "addition" should be taken down, and, if so, when, and whether the members of the common council should be punished for contempt of court because of their failure to remove it, to all of which actions and proceedings wide publicity was given, and of which the defendant's agents had knowledge, they permitted the insurance policy in question to remain uncanceled and unchanged in form.

I must find from the evidence that the defendant's agents knew when the policy was issued that the "addition" which it covered had been declared by the court to be a nuisance, or, at least, that it was seriously claimed that it was a public nuisance, and that proceedings were pending to have it so determined, and that thereafter, and during the life of the policy, and before the fire, they had ample opportunity to cancel the policy, or, at least, that part of the policy which covered the "addition," and return to the plaintiff her premium. The act of the agents in issuing the policy upon the main building, and

the "addition" thereto, with knowledge that the "addition" was a public nuisance, or that it was claimed so to be, and that proceedings were pending for its removal and destruction, and their failure thereafter to cancel the policy or return, or offer to. return, the premium paid by the plaintiff, makes the defendant liable for the actual damage caused by the fire, no matter what the court may have adjudged concerning the character of the "addition," so long as, at the time of the fire, it was still standing upon the plaintiff's premises, and attached to the main building, as it was, at the time the policy was issued, provided, of course, that the hazard and danger of destruction or damage by fire was not increased by the defendant's act, or with her knowledge.

I do not see how the judgment or order of the court declaring the "addition" to be a nuisance and directing its removal could increase the danger or risk of destruction or damage by fire, unless it be argued that such action furnished an incentive to the plaintiff to commit the crime of arson. There is no such claim in this case; the defense of arson having been abandoned at the trial. Hence the court must assume that the plaintiff was innocent of any connection with the fire or its origin, and, that being so, I can see no ground for the claim that the hazard was increased by the judgment of the court decreeing the "addition" to be a nuisance, and ordering its removal. The knowledge of the agents who issued this policy was the knowledge of the defendant, and it is the well-settled law that an insurance company will not be heard to deny liability upon a policy issued by it by claiming the existence of facts which would render it void, where it had full knowledge of such facts when the policy was issued. Robbins v. Springfield Fire Insurance Co., 149 N. Y. 477, 44 N. E. 159. The "addition" in question was a substantial frame building attached to and made a part of the main building, which was occupied by the plaintiff and her family on Grand street, and at the time of the fire it was in substantially the same condition as at the time of the issuance of the insurance policy. The evidence shows that simultaneously with the breaking out of the fire there were some explosions in the building, and the defendant claims that it was the plaintiff's duty to show what part of the damage was caused by the fire and what part was the result of the explosions. I think the evidence justifies the conclusion that practically all of the damage claimed by the plaintiff and which was assessed by the jury was done by the fire.

My conclusions are that the judgment and orders of the court, and the plaintiff's promises respecting the character of the "addition" and its removal, did not change the plaintiff's interest in, title to, or possession of the structure, so long as it remained undisturbed upon her premises, and attached, as it originally was, to the main building, and, moreover, that the defendant is bound by the knowledge of its agents respecting the character and results of the litigation concerning the said "addition," and, having issued the policy with such knowledge, cannot now deny its liability on that account, and that the plaintiff is entitled to judgment for the sum of $3,813.41, and I accordingly deny the defendant's motion to dismiss the complaint, and I direct a

verdict in favor of the plaintiff for the sum of $3,813.41 and costs, with an extra allowance of 5 per cent.

Defendant's motion for a new trial denied. Defendant to have a stay of 30 days, and 60 days to make and serve a case on appeal.