[No. B138138. Second Dist., Div. One. Mar. 6, 2001.]

HOME SAVINGS OF AMERICA, F.S.B., Plaintiff and Appellant, v. CONTINENTAL INSURANCE COMPANY, Defendant and Respondent.

836

COUNSEL

Augustini & Wheeler, Joseph J. Sheehan and John M. Bowers for Plaintiff and Appellant.

Chapin, Shea, McNitt & Carter, Maria C. Roberts, Mark T. Petersen, Shirley A. Gauvin and Andrew G. Loeb for Defendant and Respondent.

## OPINION

**ORTEGA, J.**—In this appeal, we must decide whether a loss payable clause, patterned after the ISO (Insurance Services Office, Inc.) Standard Mortgagee Clause, is a standard loss payable clause. We also must determine various coverage and exclusion issues concerning a mortgagee's claim under an all-risk homeowners policy. While the policy was in force, the named insured transferred title and moved out of the home. The home was then demolished for redevelopment purposes. Upon the insured's default on the note, the mortgagee foreclosed against the deed of trust. Due to the impairment of security caused by the demolition of the residence, the mortgagee sustained a loss for which it filed a claim on the policy. After the insurer denied the claim, the mortgagee filed suit. The trial court entered summary judgment for the insurer, finding the loss payable clause is not a standard loss payable clause that protects the mortgagee from defenses available against the named insured. We reverse the summary judgment with directions.

## BACKGROUND[1]

In late 1989, John and Joan Veenstra purchased a beachfront home in Corona Del Mar. To finance the purchase, the Veenstras borrowed $997,500 from plaintiff Home Savings of America, F.S.B. The loan was secured by a deed of trust.

Defendant Continental Insurance Company issued the Veenstras a Continental Link Plus all-risk homeowners policy. Home Savings was named in the policy as the mortgagee. The policy's mortgagee clause states in relevant part: "If a mortgagee is named in this policy, any loss payable under Building Coverage shall be paid to the mortgagee and you, as interests appear. . . . [¶] If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee: [¶] (a) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware; [¶] (b) pays any premium due under this policy on demand if you have neglected to pay the premium; [¶] (c) submits a signed, sworn statement of loss . . . ." Continental promised not to cancel or fail to renew the policy without first giving Home Savings 10 days' notice.

About January 1995, while the policy was in effect, the Veenstras, without Home Savings's knowledge, transferred title to their property to a company called Old World Craftsman (OWC). OWC is owned by Grey Fox, Inc., which, in turn, is owned by the Veenstra Family Trust, which was established by the Veenstras for their children. The Veenstras leased back their home from OWC for several months before vacating the premises, without Home Savings's knowledge, about May 1995. In September 1995, OWC, having obtained the proper permits, demolished the home in order to construct new town homes.[2] Payments continued to be made on the Veenstras' loan and insurance policy.

In December 1995, for reasons unrelated to this litigation, Continental notified the Veenstras and Home Savings that their policy would not be renewed upon its expiration on March 1, 1996.

In the spring of 1996, after a new foundation was poured, the Veenstras' loan went into default. In the fall of 1996, Home Savings began foreclosure proceedings. For the first time, Home Savings learned of the transfer of title and demolition of the residence.

---

[1] For purposes of resolving the cross-motions for summary judgment only, the trial court noted that the underlying facts were undisputed.

[2] The Home Savings trust deed, which was duly recorded, expressly prohibited any destruction of the home.

At the foreclosure sale, Home Savings acquired the property for a $680,000 credit bid, which was less than the unpaid loan balance (together with interest and foreclosure costs) of $1,059,505.18. Home Savings then resold the property for $800,000, leaving an out-of-pocket loss of $259,505.18 plus interest.

In June 1997, Home Savings (through an independent adjuster, Public Adjusters) submitted a claim to Continental for what it called the "theft?" of the residence. Under "Description of Damage," the claim stated: "only thing left of house is a dirt []lot with a slab and possibly some rough plumbing."

Continental responded to Home Savings's claim in July 1997 with a reservation of rights letter requesting additional documentation. In January 1998, Continental, based on the advice of its coverage counsel, rejected Home Savings's claim for lack of a covered loss. Home Savings disputed the denial of its claim for theft, and suggested that the loss be treated, alternatively, as a claim for vandalism. Continental, again on the advice of coverage counsel, denied the claim.

In August 1998, Home Savings filed suit against Continental. Home Savings alleged causes of action for breach of contract, breach of a third party beneficiary contract, breach of the implied covenant of good faith and fair dealing, and bad faith.

Continental moved for summary judgment or, alternatively, summary adjudication. Home Savings filed a cross-motion for summary adjudication. The parties sought a determination of Continental's duty to provide coverage under the mortgagee clause. Home Savings asserted that the mortgagee clause is a "standard" or "union" loss payable clause whereby Home Savings, as mortgagee, is free of the defenses available against the Veenstras. Continental contended that the mortgagee clause is a "simple" or "open" loss payable clause whereby Home Savings, as mortgagee, remains subject to all defenses available against the Veenstras. In addition, Continental asserted it owed no coverage as a matter of law because, among other things: (1) at the time of loss, the Veenstras no longer owned and lived in the residence as required under the building coverage clause; (2) OWC's intentional demolition of the residence for redevelopment purposes is not a covered loss because it was not a fortuitous event; and (3) the inadequacy of the security to cover Home Savings's loss was caused by the "Faulty, Inadequate or Defective Planning, Construction or Maintenance" of the premises, which is specifically excluded under the policy.

The trial court entered summary judgment for Continental, based on the absence of a duty to cover Home Savings's claim. Having classified the

mortgagee clause as a simple or open loss payable clause, the trial court held Home Savings subject to all defenses available against the Veenstras. Accordingly, the trial court found that because the Veenstras did not own and live in the property at the time of loss, there was no coverage for Home Savings' loss under the building coverage clause. In addition, the trial court held that the intentional demolition of a residence is not a fortuitous act and, hence, is not a covered loss.

## DISCUSSION

Summary judgment is appropriate only where no material issue of fact exists or where the record establishes as a matter of law that a cause of action asserted against a party cannot prevail. After examining the facts before the trial judge on a summary judgment motion, an appellate court independently determines their effect as a matter of law. (*Nicholson v. Lucas* (1994) 21 Cal.App.4th 1657, 1664 [26 Cal.Rptr.2d 778].)

In reviewing insurance contracts, we apply the ordinary rules of contractual interpretation, seeking to give effect to the parties' mutual intent. Where the contractual language is clear and explicit, it will prevail. If, however, the policy is ambiguous or uncertain, the policy must be interpreted to give effect to the objectively reasonable expectations of the insured. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].) If an ambiguity may be reasonably resolved by either of two constructions, we must select that which is most favorable to the named insured or mortgagee. (*Witherow v. United American Ins. Co.* (1929) 101 Cal.App. 334, 339-341 [281 P. 668] [mortgagee held to be entitled to coverage under standard mortgage clause for destruction by fire of the insured premises, where the evidence failed to show the mortgagee knew the insured had transferred title to the property].) "Exclusions are construed strictly against the insurer and liberally in favor of the insured. (*Arenson* v. *National Auto. & Cas. Ins. Co.* [(1955)] 45 Cal.2d 81, 83 [286 P.2d 816] [named insured held to be entitled to personal liability coverage for fire damage to school property intentionally caused by the named insured's minor son].)" (*Nuffer v. Ins. Co. of North America* (1965) 236 Cal.App.2d 349, 356 [45 Cal.Rptr. 918] [named insured held to be entitled to coverage where he did not participate in or ratify his agent's arson, and payment under the policy would not substantially benefit the agent].)

### A. *Two Types of Loss Payable Clauses*

The simple or open loss payable clause was first added to insurance policies with the intention of protecting the secured creditor. The simple or

open "loss payable clause[] directs the insurer to pay the proceeds of the policy to the lienholder, as its interest may appear, before the insured receives payment on the policy. Under this type of policy, the lienholder is simply an appointee to receive the insurance fund to the extent of its interest, and its right of recovery is no greater than the right of the insured. There is no privity of contract between the two parties because there is no consideration given by the lienholder to the insured. Accordingly, a breach of the conditions of the policy by the insured would prevent recovery by the lienholder." (*Foremost Ins. Co. v. Allstate Ins. Co.* (1992) 439 Mich. 378, 383 [486 N.W.2d 600, 602], fns. omitted.)

To afford even greater protection to the secured creditor, it became customary to modify the simple or open loss payable clause "to provide that the lender's coverage could not be forfeited by the act or default of any other person. This modified provision [originally known as a union or New York clause] came to be known as a standard mortgage clause. [Citation.]" (*Gibralter Fin. v. Lumbermens Mut. Cas.* (1987) 400 Mass. 870, 871 [513 N.E.2d 681, 682].) "Insurance companies have used standard loss payable clauses in real estate fire insurance policies since at least 1878. *Hastings v. Westchester Fire Ins. Co.*, 73 N.Y. 141 (1878)." (*Foremost Ins. Co. v. Allstate Ins. Co., supra,* 439 Mich. at p. 384, fn. 10 [486 N.W.2d at p. 602], citing Lehto, *The Standard Mortgage Clause Under Attack: The Lender's Insurance Claim When a Borrower Commits Arson* (1989) 66 U. Det. L.Rev. 603, 607.)

Under the standard loss payable clause, "a lienholder is not subject to the exclusions available to the insurer against the insured because an independent or separate contract of insurance exists between the lienholder and the insurer. In other words, there are two contracts of insurance within the policy—one with the lienholder and the insurer and the other with the insured and the insurer." (*Foremost Ins. Co. v. Allstate Ins. Co., supra,* 439 Mich. at p. 384 [486 N.W.2d at pp. 602-603], fns. omitted.)

The typical consideration given by the lienholder in return for obtaining a standard clause is the lienholder's promise to pay premiums on demand. "The union, standard or New York clause provides that the owner/mortgagor's acts or neglect will not invalidate the insurance provided that if the owner/mortgagor fails to pay premiums due, the lienholder/mortgagee shall on demand pay the premiums. In return for incurring premium liability, the lienholder/mortgagee is freed from the policy defenses which the insured might have against the owner/mortgagor. The union, standard or New York loss payable clause is then an agreement between the lienholder/mortgagee and the insurer independent of the policy contract between the owner/

mortgagor and the insurer. J.A. Appleman, *Insurance Law and Practice*, Vol. 5A, § 3401 (1970); *Glens Falls Insurance Co. v. Porter,* 44 Fla. 568, 33 So. 473 (1902); *Bank of Commerce v. Occidental Fire & Casualty Co.,* 264 So.2d 101 (Fla. 4th DCA 1972); *Southern Ins. Co. v. First National Bank at Orlando,* 237 So.2d 302 (Fla. 4th DCA 1970)." (*Progressive Am. Ins. v. Florida Bank* (Fla.Dist.Ct.App. 1984) 452 So.2d 42, 44.)

## B. *Standard Clauses*

Some standard loss payable clauses explicitly provide that the mortgagee shall be free of the defenses available against the named insured: " '[T]his insurance, as to the interest of the mortgagee only, shall not be invalidated by any act or neglect of the mortgagor or the owner of the within described property . . . .' " (*Nationwide Mut. Ins. Co. v. Hunt* (1997) 327 S.C. 89, 92 [488 S.E.2d 339, 341].) A California appellate court held in 1929 that such language constituted a standard loss payable clause. (*Witherow v. United American Ins. Co., supra,* 101 Cal.App. at p. 340.)

*Witherow* does not resolve this case, however, because the Continental Link Plus mortgagee clause contains different language. The Continental policy states in relevant part: "If a mortgagee is named in this policy, any loss payable under Building Coverage shall be paid to the mortgagee and you, as interests appear. . . . [¶] If we deny your claim, that denial shall not apply to a valid claim of the mortgagee . . . ."

Continental contends that because this language differs from that of the clause in *Witherow,* Home Savings is subject to the defenses available against the Veenstras. Home Savings, on the other hand, contends that it is free of those defenses because the Continental mortgagee clause is a standard loss payable clause that provides a separate contractual relationship between Continental and Home Savings. Home Savings also relies on the fact that a standard loss payable clause virtually identical to the Continental clause, the ISO Standard Mortgagee Clause, has been adjudicated by courts in other jurisdictions to comprise a standard loss payable clause.[3]

## C. *The ISO Standard Mortgagee Clause*

The Continental mortgagee clause is almost identical to the ISO Standard Mortgagee Clause. We have discerned only one difference, contained in a single sentence found in both policies. That sentence in the ISO

---

[3]At our request, the parties supplemented the record on appeal with a complete version of the ISO Form Homeowners Insurance Policy, from which the ISO Standard Mortgagee Clause that is contained in our record was excerpted. The complete policy may be found in Miller's Standard Insurance Policies Annotated.

clause provides: "If a mortgagee is named in this policy, any loss payable under *Coverage A or B* will be paid to the mortgagee and you, as interests appear." (Italics added.) The corresponding sentence in the Continental policy reads: "If a mortgagee is named in this policy, any loss payable under *Building Coverage* shall be paid to the mortgagee and you, as interests appear." (Italics added.)

*Coverage A* in the ISO policy applies to dwellings on the residence premises, and *Coverage B* applies to other structures on the residence premises set apart from the dwelling by clear space. The ISO policy defines "residence premises" to mean: "The one family dwelling, other structures, and grounds; or [¶] . . . That part of any other building; [¶] where you reside and which is shown as the 'residence premises' in the Declarations. [¶] 'Residence premises' also means a two family dwelling where you reside in at least one of the family units and which is shown as the 'residence premises' in the Declarations."

*Building Coverage* in the Continental policy applies to "any building at an insured location. You must own the building and use it mainly as a private residence."

Continental contends that because *Coverage A* and *B* in the ISO policy differ from *Building Coverage* in the Continental policy, the judicial opinions upholding the ISO Standard Mortgagee Clause as a standard clause are irrelevant to this case. We are not convinced. Like the *Building Coverage* clause in the Continental policy, *Coverage A* and *B* in the ISO policy apply only to buildings used by the named insured as a private residence. While unlike the Continental *Building Coverage* clause, *Coverage A* and *B* do not expressly require that the named insured *own* the building used as a private residence, this appears to be a distinction without a difference, at least for our purposes. Both the Continental and ISO policies state that a change in ownership, occupancy, or risk will not defeat coverage for the mortgagee, provided that the mortgagee notifies the insurer of any change of ownership, occupancy, or risk of which the mortgagee is aware. Even though ownership and occupancy are requirements of coverage as far as the named insured is concerned under the Continental *Building Coverage* clause, a change in ownership and occupancy will not defeat coverage for the mortgagee, provided the mortgagee gives notice of the changes of which it is aware.

Within the Continental policy, to the extent, if any, the ownership and occupancy requirements of the *Building Coverage* clause are inconsistent with the mortgagee clause, the terms of the mortgagee clause must prevail.

"While all clauses of an insurance contract should be construed together, and the provisions of a mortgage clause must be read together and harmonized with the balance of the policy when reasonably possible, the mortgage clause must prevail in the case of an irreconcilable conflict between it and other provisions of the policy. That is, insofar as the provisions of the policy are inconsistent with, and antagonistic to, the clause protecting the interest of the mortgagee, they must be regarded as inapplicable in determining his or her rights." (4 Couch on Insurance (3d ed. 1997) § 65:45, p. 65-68, fns. omitted.)

Courts in West Virginia and Mississippi, jurisdictions that statutorily require the use of standard loss payable clauses in fire insurance policies, have analyzed the ISO-type clause and found it to be a standard clause. (*Jones v. Wesbanco Bank Parkersburg* (1995) 194 W.Va. 381, 387 [460 S.E.2d 627, 633]; *Lumbermens Mut. Cas. Co. v. Thomas* (Miss. 1989) 555 So.2d 67.) Continental attempts to distinguish *Jones* and *Lumbermens* on the basis of the absence of a California statute requiring the use of standard loss payable clauses. We are not convinced, however, that the absence of such a statute in any way lessens the persuasive authority of the other decisions.

The court in *Jones* did not blindly conclude, solely on the basis of the West Virginia statute, that the ISO-type clause is a standard clause. Instead, the *Jones* court specifically compared the ISO-type clause with the "New York Standard Fire Policy (statutorily designated the West Virginia Standard Fire Policy)" and determined that the ISO-type clause "adheres to the mandates of W.Va.Code, 33-17-2 [(1957)] and the corresponding requirements of the New York Standard Fire Policy adopted in West Virginia." (*Jones v. Wesbanco Bank Parkersburg, supra,* 194 W.Va. at p. 387 [460 S.E.2d at p. 633]).

The West Virginia Standard Fire Policy provides in relevant part that if the insurer " 'shall claim that no liability existed as to the mortgagor or owner, it shall, to the extent of payment of loss to the mortgagee, be subrogated to all the mortgagee's rights of recovery, but without impairing mortgagee's right to sue; or it may pay off the mortgage debt and require an assignment thereof and of the mortgage. . . .' " (*Jones v. Wesbanco Bank Parkersburg, supra,* 194 W.Va. at p. 387 [460 S.E.2d at p. 633], italics omitted.) The ISO-type clause under review in *Jones* provides in relevant part: " 'If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. . . . [¶] If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee: [¶] a. notifies us of any change of ownership, occupancy or substantial change in risk of which the mortgagee

is aware; [¶] b. pays any premium due under this policy on demand if you have neglected to pay the premium; and [¶] c. submits a signed, sworn statement of loss . . . .' " (*Id.* at p. 383 [460 S.E.2d at p. 629].)

*Jones* concluded that the ISO-type clause is a standard loss payable clause because it establishes a separate contract between the mortgagee and the insurer. *Jones* explained: "The [ISO-type] mortgage clause at issue states, in pertinent part, that if Motorists Mutual 'den[ies] [the insureds'] claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee' fulfills three requirements specifically set forth in that provision. The [ISO-type] mortgage clause further imposes upon Motorists Mutual certain obligations if it 'pay[s] the mortgagee for any loss and den[ies] payment to [the insureds][.]' This policy language clearly indicates that Wesbanco's rights thereunder are not dependent upon the insureds' right to recover. Thus, despite Mr. Jones' conviction of arson, which precluded recovery under the policy, Wesbanco's rights, as the lender under a deed of trust named as mortgagee, are not disturbed." (*Jones v. Wesbanco Bank Parkersburg, supra,* 194 W.Va. at p. 387 [460 S.E.2d at p. 633], italics omitted.)

Courts in other jurisdictions that, like California, have no statutory requirement regarding standard mortgagee clauses, have also determined that the ISO-type loss payable clause is a standard clause. The South Carolina Supreme Court, in *Nationwide Mut. Ins. Co. v. Hunt, supra,* 327 S.C. 89 [488 S.E.2d 339], held that the ISO-type clause is a standard clause, stating: "Insurance Company argues that [the ISO-type clause] is not a standard clause because it does not contain precisely the same wording of such clauses, specifically, '. . . the interest of the mortgagee only, shall not be invalidated by any act or neglect of the mortgagor or the owner. . . .' We disagree. The [ISO-type clause], with its wording 'If we deny your claim, that denial will not apply to a valid claim of the mortgagee . . . ,' is substantially the same as the wording of typical standard clauses. It would elevate form over substance to adopt Insurance Company's argument." (327 S.C. at p. 96 [488 S.E.2d at p. 343].)

D. *Continental's Loss Payable Clause Is a Standard Clause*

So far as we are aware, every court to consider the matter has found the ISO-type clause to be a standard loss payable clause. (See, e.g., *Jones v. Wesbanco Bank Parkersburg, supra,* 194 W.Va. 381 [460 S.E.2d 627]; *Lumbermens Mut. Cas. Co. v. Thomas, supra,* 555 So.2d 67; *Nationwide Mut. Ins. Co. v. Hunt, supra,* 327 S.C. 89 [488 S.E.2d 339].) For reasons previously stated, we reject Continental's attempts to distinguish those cases

based on a minor difference in language found in a single sentence in both policies.

### 1. *Welch Requires Strict Construction of the Continental Clause*

In 1905, the California Supreme Court considered whether a fire insurance policy's ambiguous mortgagee clause was an open or a standard loss payable clause. (*Welch v. British American etc. Co.* (1905) 148 Cal. 223 [82 P. 964].) That clause, which was "part of the form of policy known as the 'New York Standard Form'" (*id.* at pp. 228-229), read: "'If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto.'" (*Id.* at p. 225.)

In analyzing the above clause, which one justice criticized for being "as awkward and as difficult to put any meaning into as any that has come under my observation in judicial investigations" (*Welch v. British American etc. Co.*, *supra*, 148 Cal. at p. 230 (conc. opn. of McFarland, J.), the court applied the rule of strict construction against the insurer. The Supreme Court explained in *Welch*: "It is well established that conditions which provide for a forfeiture of the interest of the assured or other persons claiming under the policy, are to be strictly construed against the insurance company, and if there is any ambiguity in a policy which may reasonably be solved by either one of two constructions, that interpretation shall be adopted which is the most favorable to the assured, or in this particular case, to the beneficiary in the deed of trust." (*Id.* at p. 226.)

The California Supreme Court held the mortgagee clause in *Welch* was a standard clause that had freed the mortgagee "from all such conditions, except such as are repeated at the time of the creation of that interest by being at that time *again*, in substance at least, written upon the policy or attached or appended thereto." (*Welch v. British American etc. Co.*, *supra*, 148 Cal. at p. 229, italics added.) As there were no conditions applicable to the mortgagee that were *again* written upon, attached or appended to the policy, the California Supreme Court held the mortgagee was free of the conditions applicable to the named insured. Accordingly, even though the named insured had violated a forfeiture clause requiring transfers of title to be approved by the insurer, the mortgagee's interest in the policy was unaffected by that transgression. (*Id.* at p. 228.)

The Supreme Court in *Welch* noted that several other states (New York, Minnesota, North Dakota, Wisconsin, New Jersey, and Michigan) had statutorily prescribed the use of the same mortgagee clause as in *Welch*. Although none of those states had judicially construed the mortgagee clause, six other states (Nebraska, Washington, Mississippi, Illinois, Iowa, and Missouri) had judicially construed the same clause and found it to be a standard loss payable clause.

### 2. *The Continental Clause Is Identical to the ISO Clause*

Applying the rule of strict construction against the insurer (*Welch v. British American etc. Co., supra*, 148 Cal. at p. 226), we conclude the Continental Link Plus mortgagee clause, which for all relevant purposes is identical to the ISO Standard Mortgagee Clause, is a standard loss payable clause. Even were we to find the clause to be ambiguous, which we do not, we would have to resolve the question against the insurer. The hallmarks of a standard clause are present in the form of the provisions requiring notice to the mortgagee prior to cancellation, and payment of premiums by the mortgagee upon demand. "In case of doubt, a clause in a policy providing for payment of the proceeds to a mortgagee is construed as a standard mortgage clause rather than as a mere designation of a person to receive payment of a loss. An agreement in a policy insuring a mortgagor and containing an open-mortgage clause not to cancel the policy without notice to the mortgagee, effects a contract of insurance directly with the latter, and is, in effect, a union mortgage clause." (4 Couch on Insurance, *supra*, § 65:10, p. 65-19, fns. omitted.)

### E. *Coverage Exists Under the Continental Policy*

■ Continental contends there is no coverage for a claim based on a third party's intentional destruction of a residence for redevelopment purposes. We refer to related decisions concerning the willful destruction of property by the named insured and by third parties.

### 1. *Willful Destruction of Property by the Named Insured*

Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured . . . ." Accordingly, the named insured who commits arson in order to recover under a homeowner's policy will be barred from collecting on the policy. The mortgagee will likewise be barred from recovering on the policy if the policy contains a simple loss payable mortgagee clause. (See, e.g., 4 Couch on Insurance, *supra*, § 65.26, pp. 65-40 ["If the insured has been guilty of such misconduct as bars his or

her recovery on the policy, the mortgagee is likewise barred where the insurance is payable to the mortgagee as his or her interest may appear. For example, where the policy so provides, recovery for the benefit of the insured is precluded if the premises are burned by the insured for the purpose of realizing upon the insurance." (Fn. omitted.)].) On the other hand, if the policy contains a standard loss payable clause, "the mortgagee has an independent contract with the insurer which cannot be defeated by improper or negligent acts of the mortgagor." (*Id.* at § 65:32, pp. 65-47 to 65-48, fn. omitted.) "Absent any evidence of complicity by the mortgagee, where the mortgage contains a standard or union clause, the policy is not avoided as to the mortgagee by the misconduct of the mortgagor, as in destroying an insured building by burning it, or by otherwise intentionally destroying an insured property." (*Id.* at § 65:57, p. 65-82, fns. omitted.)

The Supreme Courts of Michigan, South Carolina, West Virginia, and Utah have all concluded that where the policy contains a standard loss payable clause, the lienholder may recover for the loss caused by the named insured's intentional destruction by arson of the secured property. (*Foremost Ins. Co. v. Allstate Ins. Co., supra,* 439 Mich. 378 [486 N.W.2d 600] [lienholder could recover for loss of motor home by arson committed by the insured]; *Nationwide Mut. Ins. Co. v. Hunt, supra,* 327 S.C. 89 [488 S.E.2d 339] [mortgagee could recover for destruction of residence caused by arson committed by the insured]; *Jones v. Wesbanco Bank Parkersburg, supra,* 194 W.Va. 381 [460 S.E.2d 627] [arson by named insured did not preclude mortgagee from recovering on homeowner's policy]; *Bennett Motor Co. v. Lyon* (1963) 14 Utah 2d 161 [380 P.2d 69] [intentional arson of automobile by named insured did not preclude lienholder from recovering under an automobile policy].)

In explaining its decision for the lienholder under a standard loss payable clause in a case of arson by the named insured, the Supreme Court of Utah rejected the insurer's position that because arson is an intentional act, there can be no covered accidental loss under the policy. (*Bennett Motor Co. v. Lyon, supra,* 14 Utah 2d at p. 164 [380 P.2d at pp. 70-71].) The Utah Supreme Court pointed out that whether a loss is accidental must be determined from the claimant's point of view. If a stranger intentionally commits arson without the named insured's complicity, the loss would be considered " 'direct and accidental' " and therefore covered. (*Ibid.*) When the named insured commits arson, due to the separate contract between the lienholder and the insurer, the arson is viewed, with regard to the lienholder, as an accidental loss which is covered under the standard loss payable clause. (*Ibid.*)

Similarly, Justice Brickley's concurring opinion in *Foremost Ins. Co. v. Allstate Ins. Co., supra,* 439 Mich. at pages 395-396 [486 N.W.2d at page 608], explained that an innocent lienholder may recover under a standard loss payable clause for the intentional destruction of the secured property by the named insured, "because the loss was 'accidental' from the perspective of the lienholder. . . . Clearly, the definition of loss as 'accidental' would negate coverage under the policy for all loss or damage that results from intentional acts by parties other than the insured if a loss must be accidental from everyone's standpoint. If that were the case, the owner of the car could not recover when a third party intentionally destroyed his car and, further, theft coverage under the policy would be meaningless. Thus, under [the policy under review], whether a loss is 'accidental' must be determined from the perspective of the insured."

### 2. *Willful Destruction by Third Parties*

Continental contends that when a third party destroys a building for renovation purposes, there is no accidental loss that is covered under the policy. Continental states in its respondent's brief: "[I]t is not logical that an intentional demolition of a residence, as part of an overall renovation and development of the property by the non-insured third party owner of the residence, which was also approved by the City of Newport Beach, the California Coastal Commission and completed pursuant to applicable building codes, constitutes an act for which benefits of an insurance policy could be collected. As a New York court astutely recognized when analyzing a fire loss which occurred to a building just prior to an intended partial demolition of that building: [¶] 'If the [insured] building had been actually removed *before* the fire, by reason of its having been adjudged a nuisance, or had collapsed or been destroyed, why then, of course, it follows without argument that there could be no liability under the insurance policy.' (*Irwin v. The Westchester Fire Ins. Co.* (N.Y. Sup.Ct. 1908) 58 Misc. 441, 445 [109 N.Y.S. 612].)"

In *Irwin,* the named insured added an illegal addition to her home. A court issued a writ of mandamus directing the city to have the addition removed. The insured sought a judicial stay of the writ, which was denied. The court found, as a matter of law, that the addition was both illegal and a nuisance. The insured obtained an administrative stay, conditioned on her voluntary removal of the addition by a date certain. When the insured failed to meet the agreed-upon deadline, the city began the demolition. Before any considerable work was done, a fire of unknown origin destroyed the addition. The insured sought to recover for her loss under her fire insurance policy. The

insurer refused coverage, contending no coverage could exist for the loss by fire of a structure that had been adjudicated a nuisance and ordered torn down. In that context, the New York trial court found in favor of the insured, stating that the insurer "continued to be liable for any damage done by fire, so long as its policy of insurance remained in force. In other words, until the decree of the court was actually in effect by the destruction or removal of the building, and the abatement of the nuisance, the structure continued to be the property of the plaintiff, and her repeated promises to abate the nuisance did not deprive her of her interest therein as owner, so long as it remained upon her land, and was undisturbed." (*Irwin v. The Westchester Fire Ins. Co., supra,* 58 Misc. at p. 615 [109 N.Y.S. at p. 615].)

The *Irwin* decision does not assist Continental. If anything, its holding supports Home Savings, because the insured in *Irwin* collected (from the insurer's point of view) a windfall. Had the addition been destroyed by the work crew, the insured would have recovered nothing under the policy. But because the structure had mysteriously burned down before it could be demolished, the insured was able to recover under the policy. From the insured's point of view in *Irwin*, the loss by fire was accidental, even though the addition was in the process of being demolished.

3. *Continental's Policy Contains No Express Exclusion for the Intentional Destruction by Third Parties*

In this case, Home Savings contends, and the record does not indicate otherwise, that the demolition of the residence was entirely fortuitous from its point of view. There is nothing in the record to show that Home Savings was aware of the plans to tear down the residence to erect new town homes on the site.

In determining whether a loss is intentional so as to preclude coverage, the California courts examine the matter from the perspective of the claimant. In *Arenson v. National Auto. & Cas. Ins. Co., supra,* 45 Cal.2d 81, the named insured's minor son intentionally set fire to school property. The school district obtained a judgment against the insured. The insured filed a claim under his personal liability policy, which the insurer denied based on the policy exclusion for intentional injury. The insured successfully sued for declaratory relief. In ruling for the insured, the California Supreme Court stated: "It has been held that an exclusion provision similar to the one involved here is reasonably understood as designed to prevent indemnifying one against loss from his own wrongful acts and cannot be construed to exclude coverage for the wilful acts of another in the absence of a clear

expression showing such intent. [Citations.] This construction is further supported by decisions which hold that a policy extending coverage to several persons creates several obligations on the part of the insurer, so that a particular insured is not precluded from recovering merely because the claim of another insured is barred under the terms of an exclusion provision. [Citations.]" (*Id.* ·at pp. 83-84.)

Similarly, in *Nuffer v. Ins. Co. of North America, supra,* 236 Cal.App.2d 349, the named insured was held to be entitled to coverage where he did not participate in or ratify the arson committed by the insured's agent. Regarding the policy exclusion for intentional injury, the appellate court cited *Arenson,* stating: "Exclusions are construed strictly against the insurer and liberally in favor of the insured. (*Arenson v. National Auto. & Cas. Ins. Co., supra,* 45 Cal.2d 81, 83.) There is no express provision in the policies excluding a loss occasioned by arson of the insured's agent." (*Nuffer v. Ins. Co. of North America, supra,* 236 Cal.App.2d at p. 356.)

In this case, there is no provision in the Continental policy excluding a loss caused by the intentional demolition of the residence, with or without the proper permits, by a third party. Given the absence of any evidence showing that Home Savings approved or ratified the destruction of the residence, we conclude the loss was fortuitous as to Home Savings.

F. *No Exclusions Apply to Defeat Coverage*

Continental contends that even if coverage exists, the exclusion for faulty, inadequate, or defective development, construction, renovation, and remodeling would preclude Home Savings's claim. The policy states in relevant part: "We do not cover loss caused by faulty, inadequate or defective: [¶] (1) planning, zoning, development, surveying, siting; [and] [¶] (2) design specifications . . . construction, renovation, remodeling . . . ."

In support of its contention, Continental states: "The demolition of the residence, which Home Savings claims is the basis of its 'loss,' was only one element or step in the overall process of the renovation, development and remodeling of the property. As the renovation, development and remodeling was not completed by the time of foreclosure, it was 'inadequate.' It was this inadequate renovation, development and remodeling which left the property without a residence at the time Home Savings foreclosed. The lack of residence is the defining loss as claimed by Home Savings. As a result, Home Savings' claim clearly arises out of the inadequate renovation, development and remodeling of the property. Therefore, it is excluded under the plain language of the Continental policy."

In related arguments, Continental contends that permitting recovery under the policy in this case would transform the policy "into a construction performance or completion bond, or surety bond on the note and deed of trust. This was not the purpose or design of the Continental policy, and Home Savings should not be permitted to transform the policy into such an instrument."

As there are no cases directly on point, the most helpful decisions we have found involve auto insurance policies, which typically contain standard loss payable clauses in favor of the lienholder. They also typically contain clauses excluding the conversion, embezzlement, or secretion of the secured automobile by the debtor in possession.

In *Gibralter Fin. v. Lumbermens Mut. Cas., supra,* 400 Mass. 870 [513 N.E.2d 681], the Massachusetts Supreme Judicial Court held that a lienholder was entitled to coverage under a standard automobile policy for the loss caused by the vehicle owner's arson of the secured automobile. The insurer argued that the arson constituted a conversion of the secured automobile, and thus, fell under the exclusion for conversion. The court rejected this position, noting that the owner had committed the arson without interfering with anyone else's immediate right of possession. "Burning of the vehicle by the owner was not a conversion. If insurers wish to avoid liability to mortgagees where owners burn their vehicles, then insurers should endeavor to add arson to the list of owner acts excepted from coverage." (*Id.* at p. 873 [513 N.E.2d at p. 683].)

The Michigan Supreme Court reached the same result in *Foremost Ins. Co. v. Allstate Ins. Co., supra,* 439 Mich. 378 [486 N.W.2d 600]. In a concurrence, Justice Brickley explained that one point of view regarding the automobile policy's conversion exception is that the exception "is intended to prevent a lienholder from recovering where the owner of the vehicle fails to make payment and removes the vehicle from the reach of the lienholder. In such a case, the inability of the lienholder to enforce its security interest results from a credit problem rather than a risk of loss of or damage to the property for which the lienholder obtained insurance. Therefore, in a case where the purchaser of an automobile under a conditional sales contract tendered a bad check to the seller and thereafter absconded with the car, the California Supreme Court held that the conversion exclusion in the insurance policy prevented recovery by the lienholder. *Fiske v. Niagra Fire Ins. Co.,* 207 Cal. 355, 278 P. 861 (1929). The *Fiske* court reasoned that the parties, through the conversion exclusion, intended to exclude as a risk insured against the dishonest act of an automobile purchaser against the seller of that

automobile who voluntarily put the vehicle in the hands of the purchaser under a conditional sales contract. [Citation.] Thus, under this interpretation of the conversion exclusion, the lienholder retains the risk that a mortgagor might be a bad credit risk, despite the fact that through the standard loss payable clause the lienholder does not assume the risk that the mortgagor might intentionally destroy the insured property." (*Id.* at pp. 401-402 [486 N.W.2d at pp. 610-611] (conc. opn. of Brickley, J.), fns. omitted.)

Viewing the Continental policy's faulty construction exclusion in light of the automobile arson cases, we conclude the faulty construction exclusion is insufficient to preclude Home Savings's recovery as mortgagee for a third party's intentional demolition of the insured residence. Just as several courts have concluded that simply excluding acts of conversion is insufficient to exclude the insured's intentional arson of a secured automobile, we find that simply excluding damages flowing from faulty construction is insufficient to exclude the loss caused by a third party's intentional demolition of a secured residence.

Moreover, as the *Fiske* decision illustrates, enforcing the insurance contract in favor of Home Savings does not transform the policy into a construction performance or completion bond, or surety bond on the note and deed of trust. To paraphrase Justice Brickley, Home Savings retained the risk that the Veenstras might be a bad credit risk, despite the fact that through the standard loss payable clause, Home Savings did not assume the risk that a third party might intentionally destroy the insured property. Although Continental argues that Home Savings' better remedy is to pursue the Veenstras and OWC for waste, Home Savings may still pursue its rights under the policy: " ' "The interest of a lien holder is an insurable one despite the fact that he may sue his debtor personally or that the interest is subject to contingencies." ' [Citations.]" (*Foremost Ins. Co. v. Allstate Ins. Co., supra,* 439 Mich. at p. 399 [486 N.W.2d at p. 609] (conc. opn. of Brickley, J.).)

### G. *No Requirement to Procure Specific Insurance*

Continental contends that because Home Savings did not require the Veenstras to obtain a policy containing a standard loss payable clause, it cannot be heard to complain when no such benefits exist. Given our determination that the Continental clause is a standard one, this contention lacks merit. The fact that Home Savings did not require the Veenstras to obtain a standard loss payable clause is irrelevant. Even if Home Savings had not known about the policy's existence before the loss, it would still be entitled to the benefits. (*Tarleton v. De Veuve* (9th Cir. 1940) 113 F.2d 290, 297.)

## DISPOSITION

We reverse the summary judgment for Continental. We reverse the order denying Home Savings's Motion for Summary Adjudication. We remand with directions to the trial court to enter an order granting Home Savings's summary adjudication motion. Home Savings is awarded costs on appeal.

Spencer, P. J., and Mallano, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 13, 2001.