[No. C039872. Third Dist. Sept. 16, 2002.]

DARIN WILSON et al., Plaintiffs and Appellants, v.
FARMERS INSURANCE EXCHANGE, Defendant and Respondent.

**COUNSEL**

Law Office of Stephen P. Trover and Stephen P. Trover for Plaintiffs and Appellants.

Riegels Campos & Kenyon and John E. Fischer for Defendant and Respondent.

**OPINION**

**ROBIE, J.**—Plaintiffs Darin Wilson and Elsa Littau submitted a claim to defendant Farmers Insurance Exchange (Farmers) under an all-risk homeowners policy for the loss in the value of the house insured by the policy, which was due to an unfinished renovation project on the house. After Farmers denied the claim, plaintiffs sued Farmers for breach of contract and negligence. The trial court granted summary judgment in favor of Farmers on the ground the loss from the unfinished renovation was not fortuitous to plaintiffs. We conclude summary judgment was proper because the loss was expressly excluded from coverage as a loss caused by inadequate repair, construction, renovation, or remodeling. Consequently, we will affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

In November 1996, Wilson sold a house to Bruce Wampler and agreed to carry a second mortgage on the property behind a first mortgage in favor of Littau (Wilson's grandmother). The house was insured under an all-risk homeowners policy issued by Farmers. Littau was listed as a mortgagee on

the policy, Wampler was listed as a named insured, and Wilson was initially listed as a named insured but later changed to a mortgagee.

In February 1997, Wilson saw that Bruce Wampler's son, Chris, was remodeling the house, including replacing some exterior walls and part of the foundation and putting in new plumbing. Around March 1997, Wilson saw most of the exterior walls of the house had been stripped down to the studs. Wilson was in agreement with the remodeling work because the Wamplers told him they were improving the property and were going to put the house back together. Littau visited the house only once during the remodeling and saw that some work had been completed.

In March 1999, Wilson became concerned about the impairment of his security because Wampler had stopped making payments on the loans and had ceased any further renovation of the house. In July 1999, Wilson acquired the property by foreclosure when the renovation was still unfinished. Both plaintiffs ultimately submitted a claim to Farmers in August 1999. Although the claim is not part of the record, it is undisputed plaintiffs sought to recover under the policy for the loss in the value of the house due to the unfinished renovation.

After Farmers denied the claim, plaintiffs commenced this action for breach of contract and negligence.[1] Farmers moved for summary judgment on several grounds, including that the loss claimed by plaintiffs was not covered under the policy because it was not a fortuitous loss and that the loss was specifically excluded from coverage because it was the result of faulty or inadequate remodeling. The trial court agreed "that the course of events in this case cannot be described . . . as a fortuitous loss. Rather, it was a progressive, incremental loss which occurred with the plaintiffs' full knowledge. . . . Because they knowingly stood by while the activity which devalued their collateral took place, the court must find that their loss did not arise from a contingent or unknown event, and so was not a fortuitous loss which is covered by the policy." Plaintiffs appeal from the resulting summary judgment.

DISCUSSION

Plaintiffs contend the trial court erred in finding their claim was not based on a fortuitous loss. They argue that while they knew about the demolition work that was part of the remodeling process, they did not know Wampler would abandon the renovation before it was complete, leaving the house in a

---

[1]The complaint also included causes of action for bad faith and intentional infliction of emotional distress, but plaintiffs ultimately dismissed those causes of action.

state of disrepair. They contend Wampler's *failure to complete the renovation* was the loss, which was fortuitous to them because they had no reason to expect it.

We need not reach the issue of whether the loss caused by Wampler's abandonment of the renovation was a fortuitous loss to plaintiffs because we conclude summary judgment was proper on another basis asserted by Farmers in support its motion. (See *Salazar v. Southern Cal. Gas Co.* (1997) 54 Cal.App.4th 1370, 1376 [63 Cal.Rptr.2d 522] ["Although the trial court may grant summary judgment on one basis, this court may affirm the judgment under another"].) Specifically, we conclude as a matter of law the loss for which plaintiffs sought coverage was expressly excluded from the policy under what we will refer to as the "inadequate renovation" exclusion.

The all-risk policy at issue here provided coverage for "direct physical loss" to the house. Expressly excluded from such coverage, however, was "loss to property . . . caused by . . . [¶] . . . [¶] [f]aulty, [i]nadequate or [d]efective; [¶] . . . workmanship, repair, construction, renovation, [or] remodeling, . . ."

▇ We conclude the loss in the value of a house due to an unfinished renovation project falls within the scope of this exclusion as a loss caused by inadequate repair, construction, renovation, or remodeling. An unfinished renovation or remodeling project that leaves the house in disrepair is plainly "inadequate."

▇▇▇ Because plaintiffs, in their opening brief, addressed only the fortuitous loss issue, and because they did not file a reply brief, we have no argument from plaintiffs on whether the "inadequate renovation" exclusion applies here.[2] In the trial court, however, plaintiffs relied on the decision in *Home Savings of America v. Continental Ins. Co.* (2001) 87 Cal.App.4th 835 [104 Cal.Rptr.2d 790] (*Home Savings*) to support their contention that their loss did not fall within the scope of that exclusion.

In *Home Savings*, the plaintiff bank held a deed of trust on a beachfront home in Corona Del Mar. When the loan went into default and the bank began foreclosure proceedings, the bank learned for the first time that the owners had conveyed title to the property to a third party, who had demolished the house to make way for new town homes. (*Home Savings, supra,* 87

---

[2]We have previously warned that "[s]ince this court may affirm the grant of summary judgment on any ground properly raised below, whether or not addressed by the trial court," the "strategy" of "attack[ing] only the trial court's reason for granting summary judgment" is "ill-advised." (*Ochoa v. California State University* (1999) 72 Cal.App.4th 1300, 1304 [85 Cal.Rptr.2d 768].) Plaintiffs failed to heed our warning.

Cal.App.4th at p. 839.) After acquiring the property at the foreclosure sale with a credit bid that left an out-of-pocket loss of more than $250,000, the bank submitted a claim under the homeowners policy on the property, which the insurer rejected for lack of a covered loss. (*Id.* at p. 840.)

Division One of the Second Appellate District ultimately held that coverage existed under the policy because "the demolition of the residence was entirely fortuitous from [the bank's] point of view." (*Home Savings, supra,* 87 Cal.App.4th at p. 851.) The court also rejected the insurer's argument that the "inadequate renovation" exclusion precluded the bank's claim because the demolition was " 'only one element or step in the overall process of the renovation, development and remodeling of the property.' "[3] (*Id.* at p. 852.) The court stated: "[W]e conclude the faulty construction exclusion is insufficient to preclude Home Saving's recovery as mortgagee for a third party's intentional demolition of the insured residence. Just as several courts have concluded that simply excluding acts of conversion is insufficient to exclude the insured's intentional arson of a secured automobile, we find that simply excluding damages flowing from faulty construction is insufficient to exclude the loss caused by a third party's intentional demolition of a secured residence." (*Id.* at p. 854.)

The decision in *Home Savings* is of no assistance to plaintiffs for at least two reasons. First, to the extent the court in *Home Savings* may have suggested the exclusion at issue both here and there did not apply because it is limited to loss caused by "faulty construction," we disagree with that suggestion because by its terms the exclusion applies more broadly to any loss caused by faulty, inadequate, or defective workmanship, repair, construction, renovation, or remodeling.

Second, and more importantly, the factual distinctions between this case and *Home Savings* compel a different result here. In *Home Savings,* the insured home was not simply renovated or remodeled; it was completely destroyed, including its foundation. When the bank foreclosed, all there was on the property was a new slab and possibly some rough plumbing. (*Home Savings, supra,* 87 Cal.App.4th at pp. 839-840.) Also, the demolition was accomplished not by the named insured with the mortgagee's knowledge, as here, but by a third party entirely without the bank's knowledge. It was reasonable for the *Home Savings* court to conclude that the total destruction of the insured home by a third party without the bank's knowledge was not a risk the bank should have reasonably understood was excluded from

---

[3] The exclusion at issue in *Home Savings,* which the court referred to as "the faulty construction exclusion" (*Home Savings, supra,* 87 Cal.App.4th at p. 854), was virtually identical to the "inadequate renovation" exclusion at issue here.

coverage under the "inadequate renovation" exclusion. (See *id.* at p. 854 ["Home Savings did not assume the risk that a third party might intentionally destroy the insured property"].) Here, on the other hand, plaintiffs reasonably should have known a renovation project undertaken by or on behalf of the named insured with their knowledge, which involved some demolition but not the complete destruction of the house, gave rise to a risk that *was* excluded from coverage under the "inadequate renovation" exclusion. The risk was that the renovation or remodeling would be performed defectively or inadequately, leaving the house in a state of disrepair that reduced its value. This is exactly the sort of risk of loss expressly encompassed by the "inadequate renovation" exclusion, and exactly the sort of loss plaintiffs suffered when Wampler abandoned his renovation of the house before it was completed.

Our interpretation of the scope of the "inadequate renovation" exclusion is consistent with the only other case we have found in this area—*Husband v. Lafayette Ins. Co.* (La.Ct.App. 1994) 635 So.2d 309. In *Husband*, a tenant made a number of unauthorized alterations to the house he was renting from the plaintiffs. The work the tenant performed was "shoddy and extremely unprofessional." (*Id.* at p. 311.) When the tenant vacated the house, the plaintiffs discovered the alterations for the first time. The defendant insurance company denied the plaintiffs' claim for coverage under their all-risk homeowners policy, relying at trial on the "inadequate renovation" exclusion in the policy. In an analysis later approved by the appellate court, the trial court held the tenant's alterations "were not excluded from coverage because these renovations were not approved by the insured." (*Ibid.*) As the trial court explained: " 'This court interprets the exclusion contained in the pertinent policy provisions to apply to situations where the insured or someone authorized by the insured contracts for alterations to the property and is dissatisfied with the quality of the performance under that contract. The insurer by this exclusion intended to prevent the expansion of coverage under the policy to insuring the quality of a contractual undertaking by the insured of someone authorized by him. [¶] However, in this case the alterations were undertaken without authorization and in direct conflict with the terms of the lease, and therefore fall outside the exclusion of the policy.' " (*Ibid.*)

Our decision is consistent with *Husband* because here, in contrast to the situation in *Husband*, the renovation was undertaken by the son of the named insured, with the knowledge and implicit approval of the mortgagees because they believed the renovation would enhance the value of the home,

which was the security for their loans.[4] Where, as here, the named insured or someone authorized by the named insured engages in renovation or remodeling with the knowledge and approval of the mortgagee, the "inadequate renovation" exclusion precludes the mortgagee who is later dissatisfied with the quality of the insured's performance of the renovation from claiming coverage because the renovation has left the property worth less than it was before.

Because the loss plaintiffs claimed fell within the scope of the "inadequate renovation" exclusion as a matter of law, the trial court properly granted summary judgment in favor of Farmers.

DISPOSITION

The judgment is affirmed. Farmers shall recover its costs on appeal. (Cal. Rules of Court, rule 26(a)(1).)

Davis, Acting P. J., and Morrison, J., concurred.

---

[4]Plaintiffs assert in their opening brief that while they "were pleased to learn of the remodel work," they "never approved or ratified the remodel work." The latter assertion, however, is not supported by that portion of the record cited by plaintiffs and therefore we disregard it.