Filed 5/20/26  J.A. v. L.A. Unified School Dist. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| J.A.,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>        Defendant and Respondent. | B345115<br><br>(Los Angeles County Super. Ct. No. 23STCV11866) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas D. Long, Judge.  Affirmed.

Herman Law, Justin R. Felton, and Carina R. Nixon for Plaintiff and Appellant.

BDG Law Group, Michele M. Goldsmith, Renee B. Brown, and Matthew R. Hicks for Defendant and Respondent.

\* \* \* \* \* \*

A former public middle school student sued the school's district for negligence in not protecting him from being sexually molested by one of its teachers and in inadequately supervising that teacher.  The trial court granted summary judgment after the undisputed facts established that the student was molested in the fall of 1967, but that any conduct by the teacher which might have put the district on notice of his proclivities to molest occurred *after* the fall of 1967.  Because these undisputed facts preclude a finding that the district had actual or constructive notice, summary judgment was properly granted.  We accordingly affirm the judgment for the district.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Molestation of plaintiff in the fall of 1967*

J.A. (plaintiff) attended eighth grade at George Washington Carver Junior High School (Carver)[1] from the fall of 1967 through the spring of 1968.  At that time, Norbert Volk (Volk) was a teacher at Carver as well as the faculty advisor for the Carver Knight fraternity, which permitted students who were at "the top of the class" to participate in special activities.  J.A. is black; Volk was white.[2]

---

[1]  At the time, Carver served grades seven through nine.

[2]  Volk is now deceased.

In the fall of 1967, while plaintiff was helping the Carver Knights clean up after a student movie event in the school's auditorium, Volk "touched" plaintiff's "private part" over his clothing.  At some point later that fall, plaintiff and his brother, with their mother's permission, went over to Volk's home for dinner and to stay the night; while all three slept in the same bed, Volk "fondled" and "rubb[ed]" plaintiff's "penis area" through plaintiff's clothes.

Plaintiff told no one about either incident.

### B.      *Volk's molestation of other male students*
#### 1.      *G.B.*

G.B. attended Carver from 1966 through 1969.  Starting in the fall of 1966 and ending in the fall of 1968, Volk would invite G.B. to his home for the weekend; while there, Volk would remove G.B.'s underwear, would put his penis between G.B.'s legs and "do[] his thing," and would "play" with G.B.'s penis until both ejaculated.  G.B. is black.

G.B. would sometimes get into Volk's car on campus, and some of G.B.'s "friends" would see him get into Volk's car.

#### 2.      *O.B.*

O.B. attended Carver from 1967 through 1970.  He was a Carver Knight, and was first introduced to Volk in 1968 during eighth grade.  When O.B. worked on the "stage crew," Volk would occasionally fondle and grab O.B.'s crotch through O.B.'s clothes while in the back of the auditorium and in view of "other students . . . working back there."  Volk's touching was "very sneaky" and done in "such a way that it was very difficult for other . . . school employees to see."  Volk would also take O.B. to his home, where he would perform oral copulation on him and attempted anal penetration.

3

O.B. reported Volk's abuse to two of Carver's black faculty or staff—namely, teachers Mr. Davis and Mr. Johnson.

**C.** ***What the Carver community observed and was told***

### 1. *Mr. Johnson*

Mr. Johnson began working at Carver in the fall of 1969. He would see Volk "pull[] his car in front of the building and tak[e] kids . . . away from campus," which violated the school's rule requiring signed "trip slips" before any faculty member could take a student off campus, and which Mr. Johnson independently found to be "suspicious[]."

Mr. Johnson reported his observed violations of the "trip slip" policy by Volk to Mr. Williams (Carver's vice principal) as well as Dr. Anderson (Carver's principal).

Mr. Johnson noted that other Carver faculty and staff—specifically, Mr. Davis, Mr. Clinton, Mr. Miller, Mr. Travis, Mr. Kawachi, and "the woman who ran the student store"—also knew that Volk was taking students off campus without trip slips.

### 2. *Troy Cole*

Cole attended Carver from 1969 through 1972. Cole worked on stagecraft at the school with Volk, and Volk would get "handsy" with him. From conversations he had with fellow students in 1971 and 1972, Cole learned that other students would go to Volk's house overnight, and those who did reported running around Volk's house naked and being touched in their private areas. These conversations confirmed rumors Cole had heard in the middle of 1970 about Volk's behavior. Cole reported that several Carver faculty or staff—including Mr. Givens, Mr. Johnson, Mr. Anthony, Mr. Levy, Mr. Selma, Mr. Clanton—either knew or suspected Volk was engaging in inappropriate behavior

4

with students.  Several of these faculty or staff warned Cole that Volk was "dangerous," not to be alone with him, and not to go to his house.

## II.    Procedural Background

On June 20, 2023, plaintiff sued the Los Angeles Unified School District (the District), of which Carver was a part, for (1) negligence in not "protect[ing p]laintiff from foreseeable harm while on school grounds or at school-related functions" and (2) negligent hiring, retention, and supervision of Volk.[3]

In May 2024, the District moved for summary judgment on the ground that the undisputed facts established that no District administrator or supervisor "knew or had reason to know" that Volk "had a dangerous propensity" at the time plaintiff was molested in the fall of 1967, such that the District was not negligent for failing to prevent that molestation.  Following a full round of briefing,[4] and a hearing in December 2024, the trial court granted summary judgment for the District.  Specifically, the court found that the undisputed facts showed that J.A. "never told anyone about the abuse [Volk inflicted] at any time"; that "the first time anyone told any District personnel about Volk's abuse was nonparty O.B.'s report no earlier than 1968"; and that "there is no evidence prior to O.B.'s discussion of any notice or reports of misconduct by Volk."  Because Volk's abuse of plaintiff occurred in the fall of 1967, and hence *before* any awareness of "notice or reports of misconduct" by Volk, the court ruled that J.A. had "not shown the existence of a triable issue of fact

---

[3]    Plaintiff also sued unnamed Does for the same two causes of action, but did not subsequently identify any Doe defendants.

[4]    The District also filed evidentiary objections, but the trial court overruled those objections.

5

regarding the foreseeability of Volk's abuse and [the District's] prior knowledge of Volk's abuse." Because the court reasoned that a duty to protect under these circumstances arises only when a defendant has "prior actual knowledge," the court granted summary judgment for the District.

Following entry of judgment, plaintiff timely filed this appeal.

## DISCUSSION

Plaintiff argues that the trial court erred in granting summary judgment.

## I.   Pertinent Law

### A.   *Law of summary judgment*

Summary judgment is appropriate, and the moving party (typically, the defendant) is entitled to judgment as a matter of law where (1) the defendant carries its initial burden of showing the nonexistence of one or more elements of the plaintiff's claims, and (2) the plaintiff thereafter fails to show the "existence of a triable issue of material fact" as to those element(s). (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 853; Code. Civ. Proc., § 437c, subds. (a), (c), (o)(1), (p)(2).) While evaluating those shifting burdens, we liberally construe the evidence in support of the party opposing summary judgment and resolve all doubts concerning that evidence in favor of that party. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286; *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874; Code Civ. Proc., § 437c, subd. (c).) Nevertheless, a plaintiff's "responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact" for purposes of defeating summary judgment. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163;

6

*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145 [party "'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture'"].)

> ### B. *Tort law*

Although a public school district is not vicariously—and hence automatically—liable for the sexual abuse of students committed by its employees (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 441, 446-452 [sexual abuse is outside the scope of employment]; *Roe v. Hesperia Unified School Dist.* (2022) 85 Cal.App.5th 13, 25 [same]), a district remains liable for its own negligence, as pertinent here, in (1) negligently supervising and protecting the student from such abuse or (2) in negligently hiring, supervising, or retaining the district employee who committed the sexual abuse (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 869-870 (*C.A.*) [detailing both theories of liability]; *D.Z. v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 210, 223 [same]). Both theories of liability are grounded in negligence, which requires proof of (1) the existence of a duty running from the district to the plaintiff, (2) breach of that duty, (3) causation, and (4) damages. (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1158 (*Kesner*).) Under the theory premised on a district's negligent supervision *of the student* (the first theory) due to either "a total lack of supervision" or "ineffective supervision" of the plaintiff-student, the plaintiff must show, as pertinent here, that school personnel failed to exercise "ordinary prudence." (*C.A.*, at p. 869.) Under the theory premised on a district's negligent supervision *of the employee* (the second theory), the plaintiff must show, as pertinent here, that the district's supervisors "knew or should have known of [the

7

employee's] dangerous propensities, but nevertheless hired, retained and failed to properly supervise [him]." (*Id.* at p. 875; *Rancho Cucamonga Central School Dist. v. Superior Court* (*Flowers*) (2025) 116 Cal.App.5th 718, 721; *Roe*, at p. 26.) Because a district would fail to exercise ordinary prudence by leaving a student in the (inadequate) supervision of an employee the district "knew or should have known" to have a dangerous propensity, the two standards ultimately employ the same knowledge standard—namely, one of actual *or* constructive knowledge.  A district will be charged with constructive knowledge if the district's supervisory employees "observed" unambiguous, "inappropriate behavior" or "anything that reasonably should have triggered suspicion of abuse." (*Flowers*, at p. 722; *Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 122, 137 (*Doe*) [constructive knowledge imputed "where the misconduct is not 'ambiguous'", or when predatory behavior is "'open and obvious'"].)

### C.    *Standards of review*

We review de novo a grant of summary judgment (*Samara v. Matar* (2018) 5 Cal.5th 322, 338); because our task is to review the trial court's ruling, not its rationale, we may affirm summary judgment on any ground raised by the parties below (*Atalla v. Rite Aid Corp.* (2023) 89 Cal.App.5th 294, 307; *Wilson v. Farmers Ins. Exchange* (2002) 102 Cal.App.4th 1171, 1174, fn. 2). Although breach of a duty of care and causation are typically questions of fact (*Dailey v. Los Angeles Unified School Dist.* (1970) 2 Cal.3d 741, 749, fn. 6 [breach]; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 198 [causation]), questions of fact may nevertheless be "determined as a matter of law" on summary judgment "where the underlying facts are

8

undisputed [citation], or the evidence is susceptible of only one reasonable conclusion" (*Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.* (2006) 144 Cal.App.4th 1175, 1191).

## II. Analysis

The trial court did not err in granting summary judgment for the District because the undisputed facts establish that—at the time plaintiff was sexually abused in the fall of 1967—the District did not have actual or constructive knowledge of Volk's propensity to commit sexual abuse, and hence did not breach its duties to protect plaintiff or supervise Volk. Plaintiff did not contemporaneously tell any District employee about the sexual abuse he suffered on two occasions in the fall of 1967. Volk sexually abused G.B. starting in the fall of 1966; while that was *before* Volk sexually abused plaintiff, there is no evidence that G.B. contemporaneously told anyone about the abuse he had suffered. Volk also sexually abused O.B., but that abuse did not occur until the fall of 1968, *after* Volk sexually abused plaintiff. Mr. Johnson indicated that he observed Volk's "suspicious" and unauthorized behavior of driving students off campus without signed trip slips, but Mr. Johnson did not join the faculty of Carver until the fall of 1969, two years *after* Volk abused plaintiff. And Cole necessarily learned of Volk's reputation among Carver students and faculty for being dangerous necessarily after Cole became a student at Carver, but that was in the fall of 1969, two years *after* Volk abused plaintiff. There was no evidence that any District employee knew or should have known of Volk's propensity to engage in sexual abuse prior to the fall of 1967. Without any evidence of such actual or constructive knowledge prior to the time plaintiff was sexually abused, the

9

District was not negligent in preventing *that abuse* as a matter of law, and summary judgment was appropriately granted.

Plaintiff resists this conclusion with what boils down to three arguments.

First, plaintiff argues that we must infer that District employees witnessed Volk driving students off campus in violation of the trip slip policy *prior to the fall of 1967* (when Volk abused plaintiff) because District employees witnessed Volk following the same "modus operandi" in 1968 and thereafter. Plaintiff buttresses this argument by urging that we must construe the record in the light most favorable to him, as the non-moving party. We reject this argument. To begin, plaintiff himself was never driven off campus by Volk and, to the contrary, declined Volk's invitations for rides; as a result, Volk did not follow what plaintiff characterizes as Volk's "modus operandi" *with respect to plaintiff*. To be sure, G.B. got into Volk's car from campus prior to the fall of 1967, but G.B. testified that only his "friends" ever saw him get into Volk's car. More fundamentally, we reject the premise underlying plaintiff's argument: Although it is reasonable to infer that a person who acquired knowledge at a specific point in time still has that knowledge at a later point in time, it is *not reasonable* to infer that a person who has knowledge at a later point in time acquired that knowledge at any specific point in time in the past—because such an inference would rest on nothing but speculation. (E.g., *Johnson & Johnson Talcum Powder Cases* (2019) 37 Cal.App.5th 292, 316 [refusing to infer that a defendant's knowledge of "risks of genital talc use" reflected in "later documents" means that the defendant "knew or reasonably should have known" of those risks "in earlier years"].) Thus, even if we accept that certain District employees knew of

Volk's violations of the trip slip policy in the fall of 1968, and that this awareness should have triggered suspicion of abuse (which qualifies as constructive knowledge of that abuse), we will not engage in the speculative inference that District employees knew of any such violations prior to the fall of 1968.

Second, plaintiff argues that he need not adduce a triable issue of fact as to whether the District was "specifically aware that *Volk* sexually abused students" (italics added) because plaintiff need only show that students may be exposed to this "type" of injury (namely, sexual abuse) if a teacher or student is negligently supervised. This argument mixes apples and oranges. Although foreseeability is evaluated at a more generic level when assessing whether to impose a *duty* (*Kesner, supra*, 1 Cal.5th at p. 1152; *M.W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 518-519; *J.H. v. Los Angeles Unified School Dist.* (2010) 183 Cal.App.4th 123, 146), here we have accepted the duty as defined by governing Supreme Court precedent and are assessing whether plaintiff has adduced a triable issue of fact as to whether that duty has been breached in this case—which turns on the evidence as to whether *this* district had actual or constructive knowledge of *this district employee's* propensity for sexual abuse (*C.A., supra*, 53 Cal.4th at p. 878 ["a district's liability must be based on *evidence* of negligent hiring, supervision or retention . . ."]; *Doe, supra*, 72 Cal.App.5th at p. 127 ["'Most liability questions are case-specific and so not amenable to analysis in terms of duty—they do not allow a categorical determination whether defendant had to exercise reasonable care at all'"]). If, as plaintiff seems to suggest, the general foreseeability of the danger of sexual abuse by teachers were sufficient to establish foreseeability (and hence a breach) in

11

specific cases, then the test our Supreme Court has announced for assessing whether a district had actual or constructive knowledge sufficient to impose liability in a particular case would be irrelevant.

Third and lastly, plaintiff argues that the trial court erred in focusing on whether the District had "actual knowledge" and in citing cases that erect an "actual knowledge" standard for sexual abuse against children in contexts other than compulsory public education.  (E.g., *Doe v. Los Angeles County Dept. of Children & Family Services* (2019) 37 Cal.App.5th 675, 682-683.) Because, as noted above, we review the trial court's ruling and not its reasoning, and because we have independently determined that there is no triable issue of fact as to both actual and constructive knowledge, any error in the trial court's reasoning is not a basis for reversal.

## DISPOSITION

The judgment is affirmed.  The District is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
MOOR


_____, J.
KIM (D.)